IN THE MATTER OF CHRISTOPHER PATRICK RYAN, M.D., PLAINTIFF v. UNIVERSITY OF NORTH CAROLINA HOSPITALS, KENNETH G. REEB, M.D., WARREN P. NEWTON, M.D., BRON D. SKINNER, PH.D., SAMUEL WEIR, M.D., AND PETER CURTIS, M.D. DEFENDANTS

No. COA97-209

(Filed 6 January 1998)

**Colleges and Universities § 13 (NCI4th)— medical resident— family practice—absence of rotation in gynecology— breach of contract—statement of claim**

A medical resident in a university's family practice program stated a claim against the university for breach of contract where he alleged that the university breached the "Essentials of Accredited Residencies" by its failure to provide him a one-month rotation in gynecology.

Appeal by plaintiff from order entered 4 May 1995 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 9 October 1997.

*Egerton & Brenner, by Lawrence H. Brenner, and Maready Comerford & Britt, L.L.P., by Gary V. Mauney, for plaintiff-appellant.*

*Bell, Davis & Pitt, by Joseph T. Carruthers, for the University-appellee.*

LEWIS, Judge.

Plaintiff appeals the trial court's order dismissing his complaint for failure to state a claim pursuant to North Carolina Rule of Civil Procedure 12(b)(6). Plaintiff contends that he has alleged facts sufficient to give rise to a claim basis of breach of contract. Specifically, plaintiff argues that he contracted with the University of North Carolina Hospitals ("the University") to provide low-cost medical services in exchange for a training program that complied with the "Accreditation Council for Graduate Medical Education." The University responds that plaintiff's general allegations criticize the quality and substance of the residency program he received. As a result, the University maintains that plaintiff's claim is really one for educational malpractice, a claim that should not be recognized. We reverse.

RYAN v. U.N.C. HOSPITALS

[128 N.C. App. 300 (1998)]

Under the terms of the National Residency Program, residency programs and future residents are "matched" according to their respective preferences. A resident is both a graduate medical student and an employee. The resident receives educational training in the area of the program's medical specialization.

Plaintiff, a 1986 graduate of Georgetown Medical School, was matched with the University of North Carolina Family Practice Program. Plaintiff and the University entered into a one-year written contract that was renewable, upon the University's approval, each of the three years of the residency program. The typical family practice residency is three years.

Plaintiff's residency began 1 July 1990. Sometime during plaintiff's second year of residency, problems developed. The University planned to terminate the residency. Plaintiff retained counsel and used the internal appeal procedures. Thereafter, the parties executed a contract at the beginning of plaintiff's third year which stated in part that plaintiff knew he might graduate as much as six months later than the normal program. In fact, plaintiff graduated only three months later than normal. It is undisputed plaintiff graduated from an accredited residency program.

Plaintiff initiated this action alleging breach of contract, educational malpractice, intentional and negligent infliction of emotional distress, civil conspiracy, tortious interference with prospective business relationship, and self-defamation against the defendants. The trial court granted the University's motion to dismiss all allegations. Plaintiff appeals only the dismissal of his breach of contract claim against the University.

On appeal, plaintiff characterizes his relationship with the University as principally one of contract. He contends that he and the University simply executed an employment contract whereby plaintiff worked for a "substandard wage" in "partial consideration" for a "training program in full compliance with the Accreditation Council for Graduate Medical Education Residency Review Committee." The University contends that plaintiff's claim is merely a restatement of his educational malpractice claim, which the trial court dismissed and from which plaintiff has not appealed. This is a case of first impression for the North Carolina courts. However, other jurisdictions have found that a student can bring an action for breach of contract arising from a dispute related to an "educational contract." *See, e.g., Ross v. Creighton Univ.*, 957 F.2d 410 (7th Cir. 1992).

In *Ross*, a former student sued for negligence and breach of contract. 957 F.2d at 411. He alleged that Creighton recruited him despite its knowledge that he was not educationally prepared to perform college work, and that Creighton failed to provide any real access to its academic curriculum, as promised in return for his playing basketball. *Id.* at 411. The Seventh Circuit Court of Appeals held that Illinois did not recognize a cause of action for educational malpractice, and that the student could not recover under Illinois law for negligent admission, but the court did find that the student had stated a claim for breach of contract. *Id.* In analyzing the plaintiff's breach of contract claim the court reasoned,

> Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction . . . [and] is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution[.]

*Id.* at 416.

The court refused to review the general quality of the educational program, but recognized certain narrow circumstances under which, a plaintiff could allege a *reviewable* breach of contract. *Id.* "To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough." *Id.* at 417. Instead, he must point to an identifiable contractual promise that the University failed to honor. *Id.* The plaintiff in *Ross* alleged that Creighton had made specific promises that, *inter alia*, he would receive a tutor, that he would be required to attend tutoring sessions, and that time would be made available for him to attend the sessions in order to make the educational environment accessible to him. Thus, the *Ross* court found that the plaintiff had a claim for breach of contract on the basis of the University's specific promises. The court noted, "[r]uling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise." *Id.*

In the instant case, plaintiff makes several allegations in support of his breach of contract claim against the University. Only one, however, alleges a specific aspect of the contract that would not involve an "inquiry into the nuances of educational processes and theories." Plaintiff alleges that the University breached the "Essentials of Accredited Residencies" by "the failure to provide a one month rotation

in gynecology." In ruling upon a motion to dismiss, the question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Id.*

Accordingly, we find that plaintiff has alleged facts sufficient to support his claim for breach of contract on the basis of the University's failure to provide him a one month rotation in gynecology.

The trial court's order is reversed.

Reversed.

Judges MARTIN, John C. and TIMMONS-GOODSON concur.