**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————

No. 10-4036
——————

VAMSIDHAR REDDY VURIMINDI,

Appellant

v.

FUQUA SCHOOL OF BUSINESS; MOIRA RINGO; DOUGLAS M. BASHAR;
JOHNNY A. WILLIAMS; GREGORY S. VALENTINE; JOHN H. DOHNAL;
ALISSANDRO R. CASTILLO; ROBERT E. ROSS; SHANA KEATING; SUDHEERE
DHARANIKOTA; SUNIL BALASAHEB PATIL; AMIT KHARE;
DAVID R. MITCHELL; KRISTOFFER S. SINGLETON; PETER M. WALTON;
EUGENE WHITE; RAJIV PRASAD KOLAGANI; PRATIBHASH
CHATTOPADHYAY; JENNIFER E. HICKSON; SETH M. GILLESPIE;
JASON C. LINK; JASON S. SUNDBERG; PRADEEP RAJAGOPAL; WL GORE &
ASSOCIATES; MD LASER STUDIO; FERRO CORPORATION; ALCATEL
LUCENT; TALECRISBIOTHERAPEUTICS, INC.; DELL INC.; BOOZ ALLEN
HAMILTON; HEALTH PORT; AMGEN INC.; AGILENT TECHNOLOGIES; BANK
OF AMERICA; ERICSSON INC.; GLAXOSMITHKLINE; SIGNALSCAPE, INC.;
EMERGENT GAME TECHNOLOGIES; ACCENTURE; SEEGRID CORPORATION;
SUNTRUST BANK INC; SMITH BARNEY; SHAW AREVA MOX SERVICES
———————————————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 10-cv-00234)
District Judge: Honorable Gene E.K. Pratter
———————————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2011

Before: SMITH, JORDAN and VANASKIE, Circuit Judges

(Opinion filed: July 1, 2011 )
——————

## OPINION

_____

PER CURIAM

In his 119-page third amended complaint, Vamsidhar Vurimindi sued Duke University's Fuqua School of Business ("Duke"), his fellow students in a Duke weekend MBA program, and corporations that employed or allegedly employed those students. The defendants, proceeding in groups, moved to dismiss the complaint. The District Court granted the motions. It dismissed with prejudice the claims against Duke, most of the corporate defendants, and one of the student defendants, after considering them on the merits. The District Court dismissed for lack of personal jurisdiction the rest of the claims without prejudice (so as not to preclude their refiling in a court of competent jurisdiction). Vurimindi moved for reconsideration in a motion through which he also sought to file a fourth amended complaint. The District Court denied the motion. Vurimindi appeals.

We have jurisdiction pursuant to 28 U.S.C. § 1291. In his briefs, Vurimindi presents two main issues. He claims that the District Court erred in dismissing his breach of contract claim against Duke and in dismissing his invasion of privacy claims against Duke. Our review of these issues is plenary. See Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004). We consider no other question on appeal because Vurimindi, by failing to raise any other issue, waived any other challenge to the District Court's

2

decision.[1]  See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (citing Federal Rules

of Appellate Procedure 28 and Local Rule 28.1); see also Al-Ra'Id v. Ingle, 69 F.3d 28,

31 (5th Cir. 1995) (noting that pro se litigants are not excepted from the requirement to

raise and argue issues on appeal).

In alleging a breach of contract, Vurimindi cited, as a basis for his purported

contract with Duke, Duke's mission statement, its diversity statement, and its general

statements against harassment.[2]  Vurimindi also alleged that Duke represented that it

would help him advance his entrepreneurial activity, facilitate new relationships for him,

prepare him to lead others and manage resources, and otherwise let him experience the

"finest" weekend MBA program.  In return, he noted that he paid Duke its tuition fee,

incurred travel expenses, and lost income.  He contended that Duke breached the alleged

contract by allowing and encouraging his fellow students and professors to pick on and

otherwise harass him; failing to offer a real estate finance course to advance his

---

[1]In a motion for summary affirmance filed after the close of briefing, the student
defendants, joined by one of the corporate defendants, asked us to summarily
affirm the District Court's order as to them.  In support for their late-filed motion,
they cite a statement that Vurimindi made to another federal court that he did not
appeal from the decision in favor of the student defendants on his tortious
interference with contract claim.  The student defendants contend that is a false
statement because Vurimindi did file an appeal.  However, the statement is not
entirely inconsistent with Vurimindi's decision not to pursue the claims in his
briefs.  In any event, as we conclude that Vurimindi waived his claims after
considering the briefs, we deny the motion for summary affirmance as
unnecessary.

[2] In considering Vurimindi's claims, we look to the allegations in his complaint.
We do not consider additional allegations he includes for the first time in his brief

entrepreneurial interests or a business writing course that would help him achieve his networking and career goals; and by characterizing him as a threat on campus.

In his invasion of privacy claim, Vurimindi alleged that Duke "intruded upon [him] by secluding [him] among [sic] the rest of the student body." He claimed that Duke had its security people shadow him and its police search his room; disclosed his medications and financial information to other students; monitored his computer activity; and "gave publicity to [his] married life" which placed him in a false light among the student body.

Before we consider whether Vurimindi stated a claim for breach of contract or invasion of privacy, we must determine which state's law applies. As a federal court exercising jurisdiction in diversity over state law claims, we apply the choice-of-law rules of the forum state, Pennsylvania. See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 358 (3d Cir. 2007). The first step in the analysis under Pennsylvania law is to determine whether a conflict actually exists; if no conflict exists between the laws of the relevant states, then further analysis is unnecessary and a court can refer to the states' laws interchangeably. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229 & n.7 & 230 (3d Cir. 2007).

There is no conflict between the laws governing Vurimindi's contract claim. The essential elements of a breach of contract claim are the same under Pennsylvania and

---

on appeal. See Pennsylvania *ex rel.* Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988).

4

North Carolina law. See, e.g., Gorski v. Smith, 812 A.2d 683, 692 (Pa. Super. Ct. 2002) (listing the existence of a contract, including its essential terms; a breach of duty imposed by the contract; and resultant damages); Parker v. Glosson, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007) (describing the requirements of an existence of a valid contract and a breach of its terms). Both states allow a student to sue a university for breach of contract, but the allegations must relate to a specific and identifiable promise that the school failed to honor. See Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999); Ryan v. University of N.C. Hosps., 494 S.E.2d 789, 791 (N.C. Ct. App. 1998). A plaintiff must do more than allege that the school did not provide a good, see Ryan, 494 S.E.2d at 791, or quality, see Cavaliere v. Duff's Business Inst., 413 Pa. Super. 357, 368 & 370 (Pa. Super Ct. 1992), education. Both states also require definite and certain terms before a contract can be considered binding. See Linnet v. Hitchcock, 471 A.2d 537, 540 (Pa. Super. Ct. 1984); Elliot v. Duke Univ., 311 S.E.2d 632, 636 (N.C. Ct. App. 1984).

In Swartley, the Pennsylvania court describes the source of the terms of the contract - the guidelines, policies, and procedures contained in written materials provided to students over the course of their enrollment. See 734 A.2d at 919. It does not appear that a North Carolina court has explicitly held the same. However, in Ryan, in which the Court of Appeals of North Carolina considered whether a student could sue a university for breach of contract as a matter of first impression, the court cited Ross v. Creighton Univ., 957 F.2d 410 (7th Cir. 1992), at length. In Ross, in describing the limits of a contract action brought by a student against a school, the court stated that there is "'no

5

dissent'" from the proposition that "'catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant'" become part of the contract. See 957 F.2d at 416 (citations omitted). Although the Ryan court did not specifically cite to this part of the Ross analysis, we will assume that a North Carolina court would apply the rule from which the Seventh Circuit has said there is no dissent. But see Guiliani v. Duke Univ., 2010 U.S. Dist. LEXIS 32691, at *23-24 (M.D.N.C. Mar. 30, 2010) (requiring the incorporation of Duke's handbooks and policy manuals into a separate contract as in an employment context); Love v. Duke University, 776 F. Supp. 1070, 1075 (M.D.N.C. 1991) (holding that an academic bulletin is not a binding contract between a school and its students).

Applying these principles, Vurimindi cannot recover on his breach of contract claim. To the extent that Vurimindi presented a general complaint about the quality of the education that he received, his claim was not actionable. Furthermore, even though guidelines and policies can include specific promises on which to base a cause of action, Vurimindi did not point to any specific and definite terms that were violated in his case. In the portion of the mission statement that he presented, Duke describes its desire to provide the "highest quality education." The quoted statement contains no specific term that can be considered binding as a contract. Cf. Minehan v. United States, 75 Fed. Cl. 249, 260 (Fed. Cl. 2007) (holding that the aspirational mission statement of the IRS, which made no specific promise, could not be deemed the basis for a contract). Similarly, there are no definite contractual terms in the diversity statement, which

6

explains that Duke "appreciates and values differences." The general anti-harassment policy that Vurimindi described did no more than present Duke's view that harassment is unacceptable because it is inconsistent with its stated commitment to excellence. Vurimindi cited no promises that Duke made regarding how he would be received by the other students or professors. Although Vurimindi also alleged that Duke did not offer courses that he wanted (and which he described as important to his educational experience), he did not claim that Duke had guaranteed him a real estate finance or business writing course in exchange for his tuition dollars. For these reasons, the District Court did not err in dismissing his breach of contract claim for failure to state a claim upon which relief can be granted.

Vurimindi's allegations about the purported invasion of his privacy implicate three types of invasion of privacy: intrusion upon his seclusion; public disclosure of embarrassing private facts; and publicity which placed him in a false light in the public eye. See Renwick v. News & Observer Pub. Co., 312 S.E.2d 405, 411 (N.C. 1984) (listing types of invasion of privacy claims in reliance on Prosser's Handbook of the Law of Torts); Vogel v. W.T. Grant Co., 327 A.2d 133, 135-36 & n.9 (Pa. 1974) (same); see also Burger v. Blair Med. Assocs., 964 A.2d 374, 379 (Pa. 2009) (citing and explaining Vogel as well as citing the Restatement (2d) of Torts).

Of these three, North Carolina recognizes only one. In North Carolina, as in Pennsylvania, a claim for intrusion upon seclusion is cognizable. The standards of both states are essentially alike. To state the cause of action under Pennsylvania law, a

7

plaintiff must plead "that there was an intentional intrusion on the seclusion of their private concerns which was substantial and highly offensive to a reasonable person." McGuire v. Shubert, 722 A.2d 1087, 1092 (Pa. Super. Ct. 1998) (citations omitted). The information disclosed must be such as to cause "mental suffering, shame, or humiliation to a person of ordinary sensibilities." Id. (citation omitted). North Carolina recognizes liability when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person." Miller v. Brooks, 472 S.E.2d 350, 354 (N.C. Ct. App. 1996).

However, North Carolina does not recognize a claim of false light invasion of privacy, see Renwick, 312 S.E.2d at 413, or a claim of invasion of privacy based on the publication of true but "private" facts. See Hall v. Post, 372 S.E.2d 711, 717 (N.C. 1988). Pennsylvania, in contrast, recognizes these two torts as well (although only when accompanied by a showing of unreasonable publicity sufficient to make a matter known to the public at large or to so many persons as to make the information public knowledge). See Vogel, 327 A.2d at 136-37; Burger, 964 A.2d at 379-80 & n.6. Although aspects of the relevant state laws governing invasion of privacy claims differ, before engaging in further choice of law analysis, we must determine if there is no true conflict on these facts because the result under either state's law is the same. See Williams v. Stone, 109 F.3d 890, 896 (3d Cir. 1997). Upon review, we cannot say that there is no true conflict on any aspect of the invasion of privacy claim at this stage.

8

As we noted above, there is no conflict for the intrusion upon seclusion aspect of Vurimindi's claim because the law is the same. There is also no conflict regarding Vurimindi's false light claim because the result would also be the same under either law. Vurimindi cannot recover on that claim under North Carolina law because the state does not recognize that cause of action. He also did not state a claim under Pennsylvania law. Pennsylvania requires a showing that a false statement was publicized by the defendant with knowledge or reckless disregard of the falsity. See Santillo v. Reedel, 634 A.2d 264, 266 (Pa. Super. Ct. 1993). Alternatively, a plaintiff can plead that a defendant created a false impression and painted the plaintiff in a false light by discriminately publishing true statements. Id. at 267. Vurimindi did not meet his burden with his one allusion to "some made-up stories" that Duke purportedly disseminated and his other conclusory allegation of "publicity" about his married life.

However, there is a true conflict for his claim about publication of true but "private" facts, because the result would differ depending on which law governed. North Carolina would not recognize the claim, but Pennsylvania would. In Pennsylvania, "[t]he elements of the tort are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public." Harris v. Easton Pub. Co., 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984). The District Court concluded that the publicity part of the test would not be met. At this stage of the pleading, however, where Vurimindi alleged that Duke disseminated information to the "student body" and businesses near campus, we cannot agree. See Harris v. Easton Pub.

9

Co., 483 A.2d 1377, 1385-86 (Pa. Super. Ct. 1984) (concluding that communication to a group of 17 persons constituted publicity as a matter of law). Allowing inferences in his favor at the motion to dismiss stage, what he described as "personal" bank information, information about his "private married life," and information about his medications could be considered private facts. The third element requires that a reasonable person of ordinary sensibilities would find the publication of those facts highly offensive. See Harris, 483 A.2d at 1384 (explaining that customs and habits of the time and place are relevant to this analysis). Arguably, Vurimindi would meet his pleading burden as to this element, see Restatement (2d) of Torts, § 652D (giving examples), and the fourth one.

Where, as here, there is a conflict, "Pennsylvania applies a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court' and directs courts to apply the law of the state with the 'most interest in the problem.'" See Specialty Surfaces Int'l v. Cont'l Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010) (citations omitted); see also Kirschbaum v. WRGSB Assocs., 243 F.3d 145, 150-51 (3d Cir. 2001) (considering a tort claim). Pennsylvania's methodology, adopted in Griffith v. United Air Lines Inc., 203 A.2d 796 (Pa. 1964), is "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and "interests analysis" (qualitative appraisal of the relevant States' policies with respect to the controversy).'" See Hammersmith, 480 F.3d at 231 (citation omitted). The contacts are not merely counted, but also weighed "'on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue.'" See id.

10

(citation omitted).  The relevant contacts are the "place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered."  Griffith, 203 A.2d at 802 (citing the Restatement).

North Carolina is the place of injury, place of conduct, and the place where the relationship is centered.  Also, Duke is located in North Carolina.  Vurimindi lives in Pennsylvania (although at the time of the incidents in question, he apparently was spending weekends in North Carolina for the MBA program).  North Carolina has expressed its interest in limiting the tort liability of its citizens in this context because it sees a potential conflict with the protections of the First Amendment.  See Hall, 372 S.E.2d at 717.  Of course, Pennsylvania has an interest in its citizens' being made whole if they are wronged by a tort it recognizes.  However, its interest is attenuated in this case because any injury occurred outside of its jurisdiction based on conduct and a relationship in North Carolina.  Furthermore, North Carolina provides other causes of action which it holds out as providing the same relief to a wronged plaintiff.  See Hall, 372 S.E.2d at 717.  North Carolina's related interest - reducing duplicative suits in its forum to preserve judicial efficiency, see Renwick, 312 S.E.2d at 413 - is less relevant because the suit is brought in diversity outside its forum.  However, on balance, North Carolina has the greater interest in the problem, so we will apply its law to Vurimindi's publication claim.  Because North Carolina does not recognize the publication of private facts claim, the District Court properly dismissed it.

We now return to the one aspect of Vurimindi's invasion of privacy claim that is

so far unresolved. We conclude that the District Court should not have dismissed the claim of intrusion upon seclusion at this stage of the proceedings. Among other things, Vurimindi alleged that Duke had its police force enter and search his room and obtain information about what medications he was taking. He also stated that Duke monitored his computer activity with key logger software in order to obtain his bank information and to disclose it to the student body. Vurimindi further contended that Duke employed security people to shadow and follow him. It is possible that Vurimindi's allegations will not survive a motion for summary judgment, but, among his allegations, Vurimindi stated a claim. See Toomer v. Garrett, 574 S.E.2d 76, 90 (N.C. Ct. App. 2002 ("The kinds of intrusions that have been recognized under this tort include 'physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another.'") (citation omitted); Miller v. Brooks, 472 S.E.2d 350, 354 (N.C. Ct. App. 1996) (holding that acts of physically invading a person's home and opening his personal mail are wrongs protected by this tort).

Although we do not warrant that all aspects of Vurimindi's intrusion upon seclusion claim are plausible, we think that his allegation that campus police improperly searched his room, at least, is sufficient under Iqbal. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-52 (2009); see also Restatement (2d) of Torts, § 652B, cmt. b (describing a physical intrusion into a room or hotel); Toomer, 574 S.E.2d at 90 (concluding that a plaintiff stated a claim by alleging that defendants improperly used their authority to

12

allow unauthorized persons access to his sensitive medical and financial information).

Because the District Court should have permitted Vurimindi's intrusion upon seclusion claim to go forward against Duke, we will vacate the District Court's judgment to the extent it dismissed this claim. We will affirm the District Court's judgment in all other respects. Duke's motion to file a supplemental appendix is granted. The motion for summary affirmance filed by the student defendants (joined by one corporate defendant) is denied for the reasons given <u>supra</u>.