DAVIS, Judge.
 

 *633
 
 Philip Blizzard ("Philip") and Patricia Blizzard (collectively " Defendants") appeal from the trial court's judgment awarding Montessori Children's House of Durham ("MCHD") $12,914.57 plus attorneys' fees and costs on MCHD's breach of contract claim against them. On appeal, Defendants contend that the trial court erred by failing to conclude that MCHD breached the parties' contract, thereby excusing Defendants' nonperformance of their own contractual obligations. After careful review, we affirm.
 

 Factual Background
 

 MCHD is a private school operating in Durham, North Carolina. MCHD's "Lower Elementary" program encompasses grades one through
 
 *634
 
 three and offers a curriculum encompassing both traditional and nontraditional subjects. During the time period relevant to this action, MCHD maintained an official webpage, which stated, in part, that in the Lower Elementary program "[e]ach classroom has up to 20 students...." In addition, MCHD advertised in several local publications, including Chapel Hill Magazine and Durham Magazine, and these advertisements
 
 *513
 
 listed the student/teacher ratio of MCHD's elementary program as 10:1.
 

 In 2011, Defendants met with MCHD's Head of School, Happy Sayre-McCord ("Sayre-McCord"), about the potential enrollment of their daughter as a first-grader at the school. Defendants subsequently enrolled their daughter at MCHD for the 2011-12 school year and then renewed her enrollment for the 2012-13 academic year. During this time period, their daughter's class did not contain more than 20 students.
 

 Around March of 2013, Defendants began to have reservations about re-enrolling their daughter at MCHD for the upcoming 2013-14 school year as they were concerned about the "direction" of their daughter's education and the amount of "teacher time" she was receiving. On 22 March 2013, Sayre-McCord left Philip a voicemail informing him that his daughter's class was nearly full. Defendants ultimately decided to re-enroll her, and on 25 March 2013, Defendants and MCHD entered into a written contract-the 2013-14 Lower Elementary Tuition Agreement ("the Agreement")-pursuant to which (1) MCHD agreed to enroll Defendant's daughter as a student for the 2013-14 academic school year; and (2) Defendants agreed to pay MCHD $12,610.00 in tuition.
 

 During this time period, MCHD maintained an "Additional Fees & Replacement Policy 2013-2014," which provided, in pertinent part, as follows:
 

 Replacement Policy & Fee:
 

 Please be aware that once you sign any Tuition Agreement, you are obligated to pay the full year's tuition for that program and no reduction or credit will be granted if a student is withdrawn or does not attend, unless the withdrawal is made at the specific request of The School for reasons other than non-payment of tuition. In the event of withdrawal at the request of The School, tuition owed will be prorated according to the academic year elapsed. While this policy may cause a hardship in some cases, MCHD's budget rests almost entirely on the tuition it receives. MCHD enters into binding contracts based upon the contracts it enters into with parents, so we must rely on you to honor your financial obligation
 
 *635
 
 to us, regardless of the reason you may need to withdraw your child.
 

 Notwithstanding this obligation, parents may apply to the school to be placed in the Replacement Program. Entry into the Replacement Program is conditioned upon the submission of an application form, payment of a non-refundable Replacement Fee ($550 for MCHD, $300 for School Plus!, and/or $50 for Before School Care), and all financial obligations to the School being current. Replacement occurs when the school receives a signed Tuition Agreement for a newly enrolled student at the same program level, after that level is full. If a replacement is found, the parents will no longer be obligated for tuition in excess of the amount as prorated to the school year remaining when the new student begins attending school....
 

 In early May of 2013, Defendants learned from the parents of another student in their daughter's class that MCHD had decided to increase the size of the class for the upcoming year to 24 or 25 students. Based on this information, Defendants submitted an application on behalf of their daughter to Montessori Community School, another private school in the area, and their application was accepted.
 

 Defendants did not make their first tuition payment to MCHD as required under the Agreement by the 1 July 2013 due date. On 9 July 2013, Philip emailed Sayre-McCord to inform her that his daughter would not be attending MCHD for the upcoming school year. In this email, he stated that this decision was due to Defendants' unhappiness over the fact that "MCHD has decided to abandon its limit of 20 students per class by admitting 24-25 students to [the] Lower-El class for the coming academic year." Philip also asked to be released from his tuition obligations under the Agreement. In response to Philip's email, Sayre-McCord sent Defendants a letter by certified mail quoting the terms of the Agreement and informing them that regardless of whether Defendants' daughter actually attended MCHD for the 2013-14 academic year, Defendants would still be liable for the tuition payments provided for under the Agreement.
 

 *514
 
 Based on Defendants' continued refusal to make any of the tuition payments required under the Agreement, on 5 November 2013, MCHD filed a breach of contract claim against Defendants in Durham County District Court. A bench trial was held on 28 October 2014 before the Honorable James T. Hill. On 4 November 2014, the trial court entered
 
 *636
 
 judgment in favor of MCHD in the amount of $12,914.57 along with attorneys' fees and costs. On 2 December 2014, Defendants filed a notice of appeal.
 

 Analysis
 

 It is well established that
 

 [i]n a bench trial in which the superior court sits without a jury, the standard of review is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings. A trial court's conclusions of law, however, are reviewable
 
 de novo.
 

 Hanson v. Legasus of N.C., LLC,
 

 205 N.C.App. 296
 
 , 299,
 
 695 S.E.2d 499
 
 , 501-02 (2010) (citation omitted).
 

 In the present case, Defendants do not specifically challenge any of the trial court's findings of fact. Instead, they focus their argument exclusively on the trial court's conclusion of law that MCHD was entitled to prevail on its breach of contract claim. They contend that this conclusion was erroneous because MCHD breached the Agreement by enrolling more than 20 students in their daughter's class, thereby relieving them of their tuition obligations under the Agreement.
 

 "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."
 
 Poor v. Hill,
 

 138 N.C.App. 19
 
 , 26,
 
 530 S.E.2d 838
 
 , 843 (2000). "It is well settled that where one party breaches a contract, the other party is relieved from the obligation to perform."
 
 Ball v. Maynard,
 

 184 N.C.App. 99
 
 , 108,
 
 645 S.E.2d 890
 
 , 897,
 
 disc. review denied,
 

 362 N.C. 86
 
 ,
 
 656 S.E.2d 591
 
 (2007).
 

 Our Supreme Court has held "that the purport of a written instrument is to be gathered from its four corners."
 
 Ussery v. Branch Banking & Trust Co.,
 

 368 N.C. 325
 
 , 336,
 
 777 S.E.2d 272
 
 , 279 (2015) (citation, quotation marks and ellipses omitted). "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties."
 
 Lynn v. Lynn,
 

 202 N.C.App. 423
 
 , 431,
 
 689 S.E.2d 198
 
 , 205 (citation, quotation marks, and ellipses omitted),
 
 disc. review denied,
 

 364 N.C. 613
 
 ,
 
 705 S.E.2d 736
 
 (2010).
 

 *637
 
 When a contract expressly incorporates a document by reference, however, that document becomes a part of the parties' agreement.
 
 See
 

 Booker v. Everhart,
 

 294 N.C. 146
 
 , 152,
 
 240 S.E.2d 360
 
 , 363 (1978) ("To incorporate a separate document by reference is to declare that the former document shall be taken as part of the document in which the declaration is made, as much as if it were set out at length therein.").
 

 Here, the Agreement stated, in pertinent part, as follows:
 

 2013-14
 

 Lower Elementary
 

 Tuition Agreement
 

 This Agreement is made and entered into between the Montessori Children's House of Durham (MCHD)-The School, and
 

 Patricia Blizzard and Phil Blizzard
 

 -The Parent(s)/Guardian(s).
 

 The School hereby accepts [Defendants' daughter] (The Child) for enrollment as a pupil for the 2013-2014 academic year, beginning in or after August 2013. As the School may not be suited to your child's needs, The School reserves the right to request that a new student withdraw during an initial six-week trial period if deemed in the best interests of The Child and/or The School.
 

 Except as indicated above, children are enrolled only for the entire year, or the
 
 *515
 
 remainder of a school year if enrolled after the opening date. Parent(s)/Guardian(s) understand that they are obligated to pay the full year's tuition, and that no reduction or credit will be granted if a pupil is withdrawn unless the withdrawal is made at the specific request of the school for reasons other than non-payment of tuition. In the event Parent(s)/ Guardian(s) do not send or cease sending their child to school, the entire unpaid balance of tuition is immediately due and payable, regardless of payment option chosen.
 

 The Parent(s)/Guardian(s) agree(s) to pay $12,610 MCHD tuition for the 2013-2014 academic year, due July 1, 2013. For your convenience, you may elect to pay your obligation on an annual or semiannual basis, or over 10 months' time.
 

 ....
 

 *638
 
 In the event Parent(s)/Guardian(s) fail(s) to make any payment due under this Agreement on its respective due date, the same shall be a default and breach of this Agreement. The School shall have the right to collect interest computed at the rate of one and one half (1.5%) percent per month for balances owed of $1000 or greater, or a flat fee of $15 per month for balances under $1000, or the highest rate allowable by law, on any outstanding balance due until paid.... Parent(s)/Guardian(s) shall be responsible for, and shall promptly pay to the School upon demand, all costs and expenses (including, without limitation, reasonable attorney's fees and court costs) incurred by the School in connection with the collection of payments due under this Agreement. The School may initiate any and all actions, at law or equity, to enforce its rights and remedies.
 

 ....
 

 The Child and The Child's Parent(s)/Guardian(s) agree to comply with and be subject to the school's rules and policies, including those set forth in the MCHD Family Handbook as amended from time to time. Parent(s)/Guardian(s) understand their obligations under this Tuition Agreement and do so acknowledge with their signature(s) below[.]
 

 It is clear that the Agreement itself does not contain any language requiring MCHD to maintain a maximum class size or a certain student/teacher ratio applicable to their daughter's class. Instead, Defendants attempt to rely upon language on this subject contained on MCHD's official webpage and in two of its magazine advertisements.
 

 The Agreement does not, however, incorporate by reference MCHD's webpage or its advertisements. Indeed, the only language in the Agreement that could possibly be construed as incorporating any documents by reference reads as follows:
 

 The Child and The Child's Parent(s)/Guardian(s) agree to comply with and be subject to the school's rules and policies, including those set forth in the MCHD Family Handbook as amended from time to time.
 
 [1]
 

 *639
 
 Defendants do not contend that MCHD's Family Handbook-which is not contained in the record on appeal-contains any provisions limiting MCHD's ability to increase its class size. Nor have they pointed us to any "rules" or "policies" that would preclude MCHD from doing so.
 

 The portion of MCHD's webpage containing the language upon which Defendants rely states the following:
 

 MCHD's Lower Elementary program is comprised of children in grades 1-3.
 
 Each classroom has up to 20 students,
 
 balanced according to age and gender. Classes run from 8:20 a.m. to 3:00 p.m. Monday through Friday, with an hour break at noon for lunch and outdoor play. Characteristic of the Montessori model, students remain in the same classroom for three consecutive years.
 

 (Emphasis added).
 

 The advertisement placed in Chapel Hill Magazine is in the form of a table that contains information not only about MCHD but also regarding 13 other local private
 
 *516
 
 schools. The table contains columns for (1) "Focus"; (2) "Grades"; (3) "Total Enrollment"; (4) "Student/Faculty Ratio"; (5) "Yearly Tuition"; and (6) "Special Requirements." Under the "Student/Faculty Ratio" column, the following information is stated for MCHD: "Toddler (18 months-3 y/o), 6:1; Preschool, 11:1; Elementary, 10:1."
 

 Likewise, the advertisement in Durham Magazine contains a table with the same columns and lists the information about MCHD alongside comparable information for eight other local private schools. The student/teacher ratio information provided as to MCHD in this advertisement is identical to that contained in the Chapel Hill Magazine advertisement.
 

 Defendants also reference a meeting they had with Sayre-McCord that took place in the fall of 2011. Philip testified as follows regarding statements made by Sayre-McCord during this meeting:
 

 We asked what the student class size limit was. She told us 20. She told us that the teachers in the class would be the one certified teacher, and then an assistant would be in each class, so that translated to a ten to one ratio. And that's also what you see in the magazines that they've been advertising.
 

 ....
 

 *640
 
 Sayre-McCord expressed that they did have concerns about [Defendants' daughter] coming in, given that they were already at 19 students, and that this might be a heavy workload.
 

 In arguing that the language regarding class size and student/teacher ratios contained on MCHD's webpage and in its advertisements along with the above-quoted statements on these subjects by Sayre-McCord should be deemed contractual terms of the Agreement, Defendants rely almost entirely on our decision in
 
 Ryan v. Univ. of N.C. Hosps.,
 

 128 N.C.App. 300
 
 ,
 
 494 S.E.2d 789
 
 ,
 
 disc. review improvidently allowed,
 

 349 N.C. 349
 
 ,
 
 507 S.E.2d 39
 
 (1998). However, their reliance on
 
 Ryan
 
 is misplaced.
 

 In
 
 Ryan,
 
 the plaintiff, a graduate medical student, entered into a contract with University of North Carolina Hospitals ("the University") for a residency program pursuant to which he would provide medical services and receive educational training "that complied with the Accreditation Council for Graduate Medical Education."
 
 Id.
 
 at 300,
 
 494 S.E.2d at 790
 
 (internal quotation marks omitted). After problems arose between the University and the plaintiff, he brought suit under several legal theories, including breach of contract. In support of this claim, he asserted that "the University breached the Essentials of Accredited Residencies by the failure to provide a one month rotation in gynecology."
 
 Id.
 
 at 301-03,
 
 494 S.E.2d at 790-91
 
 (internal quotation marks omitted).
 

 On appeal, we reversed the trial court's dismissal of his breach of contract claim. While refusing to engage in an "inquiry into the nuances of educational processes and theories,"
 
 id.
 
 at 302,
 
 494 S.E.2d at 791
 
 (internal quotation marks omitted), we held that he had "alleged facts sufficient to support his claim for breach of contract on the basis of the University's failure to provide him a one month rotation in gynecology."
 
 Id.
 
 at 303,
 
 494 S.E.2d at 791
 
 .
 

 In so holding, we cited with approval the decision of the United States Court of Appeals for the Seventh Circuit in
 
 Ross v. Creighton Univ.,
 

 957 F.2d 410
 
 (7th Cir.1992). In
 
 Ross,
 
 a former student and basketball player at Creighton University sued the university for, among other things, breach of contract based on his allegation that the parties had agreed "in exchange for [the plaintiff's] promise to play on its basketball team, [the university would] allow him an opportunity to participate, in a meaningful way, in the academic program of the [u]niversity despite his deficient academic background."
 

 Id.
 

 at 415-16
 
 . The Seventh Circuit held that in order to state a breach of contract claim in this context, a plaintiff "must point to an
 
 identifiable contractual promise
 
 that the
 
 *641
 
 [school] failed to honor."
 

 Id.
 

 at 417
 
 (emphasis added). The court concluded that the plaintiff had done so by alleging the university had failed to comply with specific promises made to him regarding the provision of a tutor and opportunities for him to attend tutoring sessions.
 

 Id.
 

 *517
 
 We do not believe that the principles discussed and applied in
 
 Ryan
 
 support Defendants' argument here. While there are a number of ways in which
 
 Ryan
 
 can be meaningfully distinguished from the present case, the most basic one is that here-unlike the plaintiff in
 
 Ryan
 
 -Defendants are unable to show an "identifiable contractual promise" that MCHD failed to honor.
 

 Although the opinion in
 
 Ryan
 
 is not entirely clear on this point, it appears the contract at issue in that case expressly required the University to provide a training program for the plaintiff that complied with the policies of the Accreditation Council for Graduate Medical Education Residency Review Committee,
 
 see
 

 Ryan,
 

 128 N.C.App. at 300
 
 ,
 
 494 S.E.2d at 790
 
 , meaning both that (1) the plaintiff's breach of contract claim was based on a violation of an explicit contractual term; and (2) the contents of the committee's policies were incorporated by reference into the contract.
 
 [2]
 

 In the present case, conversely, the Agreement does not mention class size or student/teacher ratios. Nor does it incorporate by reference any documents that do address these topics. Defendants have failed to direct our attention to any controlling caselaw-or, for that matter, any case at all-holding that statements contained on a private school's webpage or in its advertisements that are not expressly incorporated by reference into a contract for admission to the school should nevertheless be treated as binding contractual terms.
 

 It is also important to note that the statements forming the basis for Defendants' argument were not promises at all. Rather, they simply described characteristics of MCHD's classes that existed at the time and did not purport to make any commitment that these characteristics would never change. Likewise, Philip's testimony about Defendants' meeting with Sayre-McCord prior to their daughter's enrollment for the 2011-12 academic year does not indicate that she promised them MCHD would strictly maintain the then-existing class size and student/teacher ratio in subsequent years. Moreover, it appears from the record that Defendants' daughter's class for the 2011-12 academic year (as well as
 
 *642
 
 for the following academic year) did, in fact, conform to the size limit and student/teacher ratio mentioned by Sayre-McCord during this meeting.
 

 We further note that MCHD's webpage also makes reference to various other characteristics of the school such as (1) MCHD's efforts to balance classes by gender and age; (2) the starting and ending times for daily classes; and (3) the provision to students of an hour-long period for lunch and outdoor play. While conceding that not all of these statements should be deemed binding contractual terms under the Agreement, Defendants offer no viable objective principle for differentiating between, on the one hand, statements on a school's webpage that merely describe certain current characteristics of the school that are potentially subject to change and, on the other hand, statements on a webpage relating to aspects of its operations that the school is legally bound to maintain and that are impliedly written into every tuition contract between MCHD and the parents of an enrolled student. Nor are we able to discern such a principle.
 

 The meeting of the minds between MCHD and Defendants was memorialized by the Agreement. MCHD fulfilled its part of the bargain by enrolling Defendants' daughter for the upcoming academic year. Defendants, conversely, breached their contractual obligations by failing to make the tuition payments they obligated themselves to pay by assenting to the Agreement. Moreover, under the plain terms of the contract, because Defendants' daughter did not withdraw at the request of MCHD, the fact that she never actually attended the school for the 2013-14 academic year did not excuse Defendants' nonperformance of their tuition obligations. Therefore, the trial court did not err by ruling in favor of MCHD on its breach of contract claim and by entering judgment against Defendants.
 

 *518
 

 Conclusion
 

 For the reasons stated above, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 Judges STEPHENS and STROUD concur.
 

 [1]
 

 We note that this provision-as worded-appears to impose an obligation on MCHD's
 
 parents and students
 
 rather than on MCHD itself.
 

 [2]
 

 Furthermore, the contract in
 
 Ryan
 
 was, in part, an employment contract, which further distinguishes it from the contract between MCHD and Defendants.