United Therapeutics Corp. v. Liquidia Techs., Inc., 2022 NCBC 59.

STATE OF NORTH CAROLINA

DURHAM COUNTY

UNITED THERAPEUTICS
CORPORATION,

              Plaintiff,

    v.

LIQUIDIA TECHNOLOGIES, INC.
and ROBERT ROSCIGNO,

              Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 4094

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF UNITED
THERAPEUTICS CORPORATION'S
FIRST AMENDED COMPLAINT**

1.    **THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff United Therapeutics Corporation's First Amended Complaint ("Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). (ECF No. 22.)

2.    Having considered the Motion, the related briefs, and the arguments of counsel at a hearing on the Motion, the Motion is **DENIED**.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr., Eric M. David, and Kasi W. Robinson; McDermott Will & Emery, LLP, by Douglas H. Carsten; and Goodwin Procter, LLP, by William Jackson, for Plaintiff United Therapeutics Corporation.*

*Parker Poe Adams & Bernstein LLP, by Stephen V. Carey and Corri A. Hopkins; and Cooley, LLP, by Sanya Sukduang, and Jonathan Davies, for Defendant Liquidia Technologies, Inc.*

*McGuireWoods, LLP, by Mark E. Anderson, David E. Finkelson, and Miles O. Indest, for Defendant Dr. Robert Roscigno.*

# I. INTRODUCTION

3.      The parties in this case are two competing biotech companies and an executive who worked for both companies at different times in his career.

4.      Defendant Dr. Robert Roscigno ("Roscigno") was employed by United Therapeutics Corporation ("UTC") for about a decade, during which time he made contributions to the company's development of treatments for pulmonary arterial hypertension ("PAH"). His work focused on two treprostinil[1] treatments marketed under the brand names Tyvaso® and Remodulin®.

5.      Sometime after Roscigno left UTC he joined Defendant Liquidia Technologies, Inc. ("Liquidia"), a company that is developing a third formulation of treprostinil for the treatment of PAH. UTC claims that Roscigno improperly took trade secrets and confidential information "key to the development of Tyvaso® and Remodulin®" with him when he left its employ, and that he disclosed the information to Liquidia, giving Liquidia an unfair advantage in the development of its competing treatment.

6.      UTC has sued Liquidia for unfair and deceptive trade practices and is pursuing both Roscigno and Liquidia for misappropriation of trade secrets. Defendants have moved to dismiss all claims.

---

[1] Treprostinil is a drug used in the treatment of lung disease. *See* www.ncbi.nlm.nih.gov/books/NBK545152/ (last visited Oct. 13, 2022).

## II. FACTUAL AND PROCEDURAL BACKGROUND

7.     The Court does not make findings of fact when ruling on a motion to dismiss.  It recites below those factual allegations in the Amended Complaint that are relevant and necessary to the Court's determination of the Motion before it.

8.     UTC is a Delaware corporation with a place of business in Research Triangle Park, North Carolina.  UTC researches and develops treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other chronic and life-threatening conditions.  Lung Rx, Inc. ("Lung Rx") is UTC's subsidiary.[2]  (First Am. Compl. [hereinafter "Compl."] ¶¶ 2, 5, 10) (ECF No. 15.)

9.     Liquidia is a Delaware corporation with a principal place of business in Morrisville, North Carolina.  Liquidia competes with UTC in the development of treatments for PAH.  (Compl. ¶¶ 2–3, 6.)

10.     Roscigno worked as an executive for UTC from 1997 through 2007.  Liquidia later hired Roscigno as its Senior Vice President of Product Development.  He was employed by Liquidia as recently as July 2020.  (Compl. ¶¶ 2, 7, 11.)

11.     During Roscigno's time at UTC, he oversaw the clinical development of treatments for PAH.  Roscigno's contributions assisted UTC in bringing to market two methods of delivery for treprostinil:  an inhaled treatment branded as Tyvaso®,

---

[2] Throughout the allegations, UTC alleges that Roscigno was employed by UTC or its subsidiary Lung Rx. (*See* Compl. ¶¶ 2, 11, 13–14.)  For the purpose of this Order and Opinion, references to UTC include its subsidiary Lung Rx.

and an injection treatment branded as Remodulin® (together, the "Treatments"). (Compl. ¶¶ 11–12.)

12. Consequently, Roscigno was exposed to "significant amounts of UTC's confidential information and trade secrets[,]" which UTC alleges include:

> detailed competitively sensitive financial projections and lifecycle management planning for UTC's clinical and research programs; specific know-how regarding obtaining FDA approval for treprostinil sodium drug products indicated for treatment of PAH, including specific methodologies for demonstrating adequate safety data and strategies for how to preempt FDA concerns based on template(s) of UTC's submissions; and non-public subject matter that is the intellectual property of UTC.

(Compl. ¶ 13.) UTC contends that this information, "was and remains key to the successful development of Tyvaso® and Remodulin®." (Compl. ¶ 13.)

13. According to the Amended Complaint, after leaving UTC, Roscigno took this confidential and trade secret information and joined Liquidia, where he was instrumental in its drug development efforts, including the development of Liquidia's treprostinil treatments. UTC alleges, upon information and belief, that Liquidia improperly benefited from UTC's confidential and trade secret information because it enabled Liquidia to bring to market Liquidia's treprostinil treatments "before Liquidia otherwise would have been in [a] position to do so." (Compl. ¶¶ 3, 14.)

14. UTC is aware that Liquidia is in possession of UTC's confidential information because Liquidia produced documents containing this information during discovery in patent litigation in Delaware. (Compl. ¶ 15.) *See generally United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, 2022 U.S. Dist. LEXIS 158209 (D. Del. Aug. 31, 2022). According to UTC, the documents produced contain

"detailed financial records and forecasts, UTC's confidential regulatory submissions and correspondences, and UTC's confidential and trade secret information regarding drug development and approval efforts, strategies, and confidential protocol developments." (Compl. ¶ 16.)

15. UTC alleges that despite its reasonable efforts to maintain the secrecy of its trade secrets, including through the use of confidentiality and non-competition provisions in employment agreements, employing intellectual property rights, restricting access to sensitive information, and marking documents as "confidential," among other things, Defendants Roscigno and Liquidia have improperly acquired and used its confidential information and trade secrets. (Compl. ¶ 17.)

16. UTC initially filed its Complaint on 10 December 2021, asserting four causes of action. (ECF No. 3.) On 13 December 2021, the action was designated as a mandatory complex business case and assigned to the undersigned. (ECF Nos. 1, 2.)

17. On 7 January 2022, Defendants removed this action to the U.S. District Court for the Middle District of North Carolina based on federal-question jurisdiction. (ECF No. 6.) After removal, UTC filed its First Amended Complaint ("Amended Complaint") omitting its claim for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*. As a result, the federal district court remanded the action to this Court.

18. The Amended Complaint initially contained three causes of action: (1) misappropriation of trade secrets under the North Carolina Trade Secrets Protection Act, N.C.G.S. §§ 66-152 *et seq*., ("NCTSPA"), (2) unfair and deceptive trade practices

under the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*, ("UDTPA"), and (3) conversion under North Carolina common law.

19. On 10 May 2022, Defendants filed this Motion seeking dismissal of all claims. (ECF No. 22.) On 27 May 2022, UTC voluntarily dismissed the Third Cause of Action (Conversion), thereby mooting that aspect of the Motion. (ECF No. 31.) Defendants' Motion has now been fully briefed, and the Court entertained arguments at a hearing held 21 July 2021. (*See* ECF No. 40.) The Motion is now ripe for decision.

## III. LEGAL STANDARD

20. A claim fails and dismissal is proper pursuant to Rule 12(b)(6): "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278 (1985). However, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103 (1970) (emphasis omitted).

21. In deciding this Motion, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). However, the Court must construe the Amended Complaint liberally and

accept all allegations as true for purposes of its ruling. *See Laster v. Francis*, 199 N.C. App. 572, 577 (2009).

22. Finally, with respect to this early motion, "the issue is not whether a claimant will prevail, but whether the claimant is entitled to offer evidence in support of the claim." *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 325 (2008) (citing *Ryan v. Univ. of N.C. Hosps.*, 128 N.C. App. 300 (1998)).

## IV. ANALYSIS

23. At issue here is whether UTC has sufficiently plead: (1) a claim for misappropriation of trade secrets under the NCTSPA against both Roscigno and Liquidia, and (2) a claim for unfair and deceptive trade practices under the UDTPA against Liquidia.

### A. <u>Claim One: Misappropriation of Trade Secrets</u>

24. For UTC's misappropriation of trade secrets claim to survive, UTC must "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Washburn*, 190 N.C. App. at 326 (2008) (quoting *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 468, (2003) (citations omitted)). "[G]eneral allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, [are] 'insufficient to state a claim for misappropriation of trade secrets.'" *Krawiec v. Manly*, 370 N.C. 602, 610 (2018) (quoting *Washburn*, 190 N.C. App. at 327)).

25.     The NCTSPA defines a trade secret as "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that" both:

a. [d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3).  *See also Sterling Title Co. v. Martin*, 266 N.C. App. 593, 601 (2019) (quoting *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 470 (2003)).

26.     Our Courts have employed six factors when determining the existence of a trade secret:

(1) the extent to which the information is known outside the business; (2) the extent to which it is known to employees and others involved in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of information to business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 369–70 (2001); *accord Wilmington Star-News, Inc. v. New Hanover Reg'l Med. Ctr., Inc.*, 125 N.C. App. 174, 180–81 (1997).  "These factors overlap, and courts do not always examine them separately and individually." *Vitaform, Inc. v. Aeroflow, Inc.*, 2020 NCBC LEXIS 132, at **19 (N.C. Super. Ct. Nov. 4, 2020).

27.     In addition, when alleging misappropriation, UTC must allege more than its belief that Liquidia has used its trade secrets.  *See Washburn*, 190 N.C. App.

at 327 (citing *VisionAIR, Inc.*, 167 N.C. App. at 511). The NCTSPA defines misappropriation as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C.G.S. § 66-152(1). General and conclusory allegations of misappropriation will not survive a motion to dismiss. *See, e.g.*, *Bite Busters, LLC v. Burris*, 2021 NCBC LEXIS 26, at **22–23 (N.C. Super. Ct. Mar. 25, 2021); *Washburn*, 190 N.C. App. at 327; *Strata Solar, LLC v. Naftel*, 2020 NCBC LEXIS 129, at **11-12 (N.C. Super. Ct. Oct. 29, 2020).

28. Defendants argue that UTC has failed on both fronts. (Defs.' Br. Supp. Mot. Dismiss Am. Compl. 1–2, [hereinafter "Defs.' Br."], ECF No. 23.) They first contend that UTC's description of the alleged trade secrets at issue is so vague that Defendants are unable to delineate what they are accused of misappropriating, and likewise, the Court cannot determine if misappropriation has occurred or is threatened to occur. (Defs.' Br. 2.) This failure, Defendants argue, necessitates the dismissal of UTC's claim for misappropriation of trade secrets. (Defs.' Br. 1–2.)

29. UTC defends the sufficiency of its pleading. It highlights paragraphs 13 and 16 of its Amended Complaint as the "central allegations identifying the trade secrets[.]" (Br. Opp. Defs.' Mot. Dismiss 5–6, [hereinafter "Pl.'s Br."], ECF No. 30.) In paragraph 13, UTC identifies its trade secrets as: (1) detailed financial projections and life cycle management planning for its clinical and research programs; and (2) specific know-how for obtaining FDA approval of treprostinil sodium drugs that treat

pulmonary arterial hypertension, including (a) methodologies for demonstrating adequate safety data, and (b) strategies to preempt FDA concerns based on template UTC submissions, as well as "non-public subject matter that is the intellectual property of UTC." (Compl. ¶ 13.)

30. In paragraph 16, UTC identifies documents containing its trade secrets that it claims were taken by Roscigno. It describes them as: "confidential and competitively sensitive detailed financial records and forecasts, UTC's confidential regulatory submissions and correspondences, and UTC's confidential and trade secret information regarding drug development and approval efforts, strategies, and confidential protocol developments." (Compl. ¶ 16.) In paragraph 22, UTC states that Defendants have its "product development documents, confidential clinical trial documentation, and confidential budget documents[.]" (Compl. ¶ 22.) Further defining the trade secrets at issue, UTC alleges in paragraph 15 that they are contained in documents that Liquidia produced during discovery in the patent litigation. (Compl. ¶ 15.)

31. The Court concludes that UTC has described the trade secrets at issue with sufficient specificity for its claim to survive the Motion. UTC alleges broadly that the information relates to treprostinil treatments for PAH. (Compl. ¶ 13.) It describes the types of information that it contends constitute trade secrets. Even more, UTC identifies the documents in which the trade secrets can be found and alleges that they were produced during discovery in the patent litigation. These allegations suffice at this stage to put Defendants and the Court on notice of the

purported trade secrets that have allegedly been misappropriated. *Krawiec*, 370 N.C. at 612.[3]

32.     With respect to misappropriation, Defendants contend that UTC has insufficiently pled the acts by which misappropriation was accomplished. (*See* Defs.' Br. 16–17.)

33.     UTC responds that the Amended Complaint pleads "acquisition, disclosure, [and] use of a trade secret of another without express or implied authority or consent[.]" N.C.G.S. § 66-152(1). (*See* Pl.'s Br. 8–9.) UTC alleges that Roscigno had access to UTC's trade secrets while leading the development of its treprostinil treatments, that Roscigno carried the trade secrets to Liquidia, and that, upon information and belief, they were used improperly to benefit Liquidia in the development of another treprostinil treatment. (Compl. ¶ 13–14.)

34.     The Court concludes that UTC has sufficiently plead misappropriation. UTC has alleged more than the mere fact that Roscigno was able to access its trade secrets while he was employed. *See Am. Air Filter Co. v. Price*, 2017 NCBC LEXIS 9, at \*22 (N.C. Super. Ct. Feb. 3, 2017) (observing that opportunity to acquire a trade

---

[3] Indeed, North Carolina courts have held that less descriptive pleadings were adequate to state a claim at this early stage. *See e.g.*, *Ge Betz, Inc. v. Conrad*, 231 N.C. App. 214, 234 (2013) ("chemical formulations, pricing information, customer proposals, historical costs, and sales data"); *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371, 375 (2001) ("[c]onfidential data regarding operating and pricing policies"); *Drouillard v. Keister Williams Newspaper Servs., Inc.*, 108 N.C. App. 169, 173–74 (1992) ("customer lists and pricing and bidding formulas"); *Computer Design & Integration, LLC v. Brown*, 2017 NCBC LEXIS 8, at \*27–28 (N.C. Super. Ct. Jan. 27, 2017) ("financial information and contact lists").

secret, without more, is not sufficient to establish a *prima facie* case of misappropriation).[4]

35.     UTC alleges that Roscigno worked on treprostinil treatments for UTC giving him access to trade secrets, that he transferred and used UTC's trade secrets after his employment ended, and that he carried the trade secrets to Liquidia, where he worked on its treprostinil treatment under development. (Compl. ¶¶ 13–15.) UTC further alleges that Liquidia is in possession of UTC's trade secrets as evidenced by the fact that Liquidia produced the trade secrets back to UTC during discovery in the patent litigation. (Compl. ¶ 15.) While perhaps requiring an "inferential leap" to conclude that the trade secrets were improperly *used* by Liquidia, *cf. Wells Fargo Ins. Servs. USA v. Link*, 2018 NCBC LEXIS 42, at *41 (N.C. Super. Ct. May 8, 2018), *aff'd per curiam*, 372 N.C. 260 (2019), in this case it is not necessary to take that leap. The statute does not require UTC to allege improper use in order to state a claim. Alleging improper acquisition or disclosure is enough. Given this standard, Plaintiff's allegations are sufficient. *See Krawiec*, 370 N.C. at 609; *Strata Solar, LLC*, 2020 NCBC LEXIS 129, at **11.

36.     Accordingly, Defendants' Motion to Dismiss UTC's First Cause of Action (Misappropriation of Trade Secrets) is **DENIED**.

---

[4] Defendants' argument that "UTC has *no evidence* that Liquidia or Dr. Roscigno ever acquired or disclosed UTC's alleged trade secrets," is one more properly made at the summary judgment stage than here, where the Court is limited to the allegations in the Amended Complaint. (Defs.' Br. 17) (emphasis in original).

## B. **Claim Two: North Carolina Unfair and Deceptive Trade Practices Act**

37.   "To establish a prima facie case of unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 303 (2004).

38.   Liquidia argues that because its treprostinil treatment is still in development and not yet commercially available, the alleged misappropriation of UTC's trade secrets is not "in or affecting commerce." (Defs.' Br. 21–22.) Our Supreme Court has rejected such a narrow reading of the statute. *See United Labs., Inc v. Kuykendall*, 322 N.C. 643, 665 (1988) ("[W]e have not limited the applicability of N.C.G.S. § 75-1.1 to cases involving consumers only. After all, unfair trade practices involving only businesses affect the consumer as well." (citation omitted)).[5]

39.   The Court determines that the allegations in this case, involving the transfer of trade secret information between competing companies regarding the development of products that are either already on the market, or are intended for the market, satisfies the pleading requirements necessary to state a claim for unfair and deceptive trade practices.

---

[5] Although to date North Carolina courts have decided in cases presented to them that a claim for misappropriation of trade secrets also constitutes a violation of the UDTPA, the reach of the UDTPA is not without limits. *See e.g.*, *Medical Staffing Network, Inc. v. Ridgway*, 194 N.C. App. 649, 659; *Drouillard*, 108 N.C. App. at 172–73; *Mech. Sys. & Servs. v. Howard*, 2021 NCBC LEXIS 69, at *13–14 (N.C. Super. Ct. Aug. 11, 2021); *Wells Fargo Ins. Servs. USA*, 2018 NCBC LEXIS 42, at *51; *but see James R. Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172 (2009) ("[O]ur case law reveals that the Act does not apply to all wrongs in a business setting.") (collecting cases).

40.    The Court therefore **DENIES** Liquidia's Motion to Dismiss UTC's Second Cause of Action against it (Unfair and Deceptive Trade Practices).

## V. CONCLUSION

41.    For the foregoing reasons, the Defendants' Motion to Dismiss Plaintiff United Therapeutics Corporation's First Amended Complaint as to the First Cause of Action (Misappropriation of Trades Secrets) and Second Cause of Action (Unfair and Deceptive Trade Practices) is **DENIED**.  As to Plaintiff's Third Cause of Action (Conversion), the Motion is **DENIED as Moot.**

IT IS SO ORDERED, this the 13th day of October, 2022.


/s/ Julianna Theall Earp
_____
Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases