IN THE COURT OF APPEALS OF NORTH CAROLINA

2023-NCCOA-1

No. COA21-797

Filed 17 January 2023

Orange County, No. 20CVS564

DEENA DIECKHAUS, GINA MCALLISTER,
BRADY WAYNE ALLEN, JACORIA STANLEY,
NICHOLAS SPOONEY and VIVIAN HOOD, each
individually and on behalf of all others
similarly situated, Plaintiffs,

v.

BOARD OF GOVERNORS OF THE UNIVERSITY
OF NORTH CAROLINA, Defendant.

Appeal by plaintiffs from order entered 17 June 2021 by Judge Edwin G. Wilson, Jr. in Superior Court, Orange County. Heard in the Court of Appeals 10 May 2022.

*Anastopoulo Law Firm, LLC, by Blake G. Abbott, for plaintiffs-appellants.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jim W. Phillips, Jr. and Jennifer K. Van Zant, and Attorney General Joshua H. Stein, by Special Deputy Attorneys General Laura McHenry and Kari R. Johnson, for defendant-appellee.*

STROUD, Chief Judge.

¶ 1    Plaintiffs Deena Dieckhaus, Gina McAllister, Brady Wayne Allen, Jacoria Stanley, Nicholas Spooney, and Vivian Hood appeal an order granting Defendant Board of Governors of the University of North Carolina's Motion to Dismiss Plaintiffs'

Amended Complaint. The Amended Complaint included both contract and unjust enrichment claims. Because sovereign immunity bars the unjust enrichment claims and because statutory immunity bars both the unjust enrichment and contract claims, we affirm the trial court's order dismissing all claims.

## I.  Background

Since this case is at the pleading stage, we rely upon the facts as alleged in Plaintiffs' Amended Complaint.[1]  Defendant is the Board of Governors for the University of North Carolina System, and that System includes 17 "constituent institutions throughout the State" (collectively "Universities"). "As a precondition for enrollment" for the Spring 2020 Term, Defendant required students planning to attend the Universities to pay tuition. When charging tuition, Defendant charged students different rates depending on which of two types of programs the students chose, an "in-person, hands-on program[]" and a "fully online distance-learning program[.]"  In addition to the differential pricing, Defendant marketed the two programs differently through its and the Universities' "website[s], academic catalogues, student handbooks, marketing materials and other circulars, bulletins,

---

[1] We focus on the Amended Complaint because the order on appeal ruled on Defendant's Motion to Dismiss the Amended Complaint. On 22 May 2020, Plaintiffs filed their original Complaint. On 14 August 2020, Defendant filed a Motion to Dismiss the Complaint. Before that motion was heard, Plaintiffs filed their Amended Complaint on 30 December 2020, as discussed more below.

and publications" that differentiate between "fully online" programs and "non-online" programs with "references to and promises about the on-campus experience[.]"

¶ 3 Plaintiffs here all paid tuition and enrolled in the in-person program for the Spring 2020 Term, with one exception. Plaintiffs Dieckhaus, McAllister, Allen, Stanley, and Spooney all enrolled as undergraduates in different Universities in the system. Plaintiff Hood paid tuition to enroll her daughter at one of the Universities' campuses for the Spring 2020 Term.

¶ 4 Beyond the tuition students paid to enroll, they paid additional fees. Defendant charged students, including Plaintiffs, "certain mandatory student fees." In Defendant and its Universities' "publications" including "catalogs" and "website[s]," Defendant "specifically describe[d] the nature and purpose of each fee." The student fees paid by students were then "intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed." Plaintiffs paid all applicable fees for the Spring 2020 Term. Finally, a certain subset of students, including Plaintiffs McAllister, Spooney, and Hood paid additional fees "for the right to reside in campus housing and for access to a meal plan providing for on campus dining opportunities."

¶ 5 Plaintiffs and other students started the Spring 2020 Term with on-campus, in-person education and with access to the services for which they paid student fees, housing fees, and on-campus meal fees. "On or about March 11, 2020, in response to

the COVID-19 pandemic, Defendant issued a system-wide directive to all" the Universities "requiring that they transition from in-person to online instruction no later than March 23, 2020." As a result, starting on 23 March 2020 through the end of the Spring 2020 Term, "there were no in person classes at" the Universities, "and all instruction was delivered online." Another directive from Defendant to all the Universities "[o]n or about" 17 March 2020 "instruct[ed] students living in campus housing to remain at or return to their perme[n]ant residences." As a result of this directive, the Universities closed their on campus residences and prevented student access to dining facilities. The campus shutdowns also meant students "no longer ha[d] the benefit of the services for which" they paid student fees. Defendant "announced" it would be offering "pro-rated credits or refunds for students who pre-paid housing and meal costs for the Spring 2020" Term—and did offer some refunds—but it did not offer refunds for tuition or student fees.

¶ 6        Based on these alleged facts, Plaintiffs filed their Amended Complaint on 30 December 2020. The Amended Complaint includes both breach of contract claims and unjust enrichment claims seeking "refunds . . . on a pro-rata basis" for "tuition, housing, meals, [and student] fees . . . that Defendant failed to deliver for the second half of the Spring 2020" Term after shutting down the Universities' campuses in response to COVID-19. As to all these claims, the Amended Complaint alleges the General Assembly "has explicitly waived sovereign immunity in suits against

Defendant" because Defendant "is a body politic" that is, *inter alia*, "capable in law to sue and be sued in all courts whatsoever." The Amended Complaint also asserts Plaintiffs "bring this action on behalf of themselves and as a class action" on behalf of four classes for each of the four categories of payments: tuition, fees, on-campus housing, and on-campus meals. As a result, the Amended Complaint includes "Class Action Allegations[,]" (capitalization altered), but the class action component of the lawsuit is not at issue in this appeal.

¶ 7 As to the tuition breach of contract claim, the Amended Complaint alleges Defendant offered to Plaintiffs and the proposed class its on-campus "live, in-person education" for the Spring 2020 Term in contrast to its "separate and distinct" online-only educational program. In addition to the descriptions through online and written materials discussed above, Defendant and its Universities differentiated between the two programs with respect to the Spring 2020 Term specifically by differences in how students registered for on-campus versus online instruction and "the parties' prior course of conduct" in starting classes "for which students expected to receive in-person instruction" with such instruction and with class materials with in-person "schedules, locations, and . . . requirements." Plaintiffs and the proposed class then "accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020" Term. The Amended Complaint alleges Defendant then breached the contract by shutting down its campuses and shifting "all classes" to online

learning "without reducing or refunding tuition accordingly." Finally as to this claim, the Amended Complaint states "[t]his cause of action does not seek to allege 'educational malpractice'" but instead focuses on how "Defendant provided a materially different product," online learning, from the one Plaintiffs and the proposed class paid for, "live[,] in-person[,] on-campus education[.]" As a result of this breach, Plaintiffs allege they suffered damages "amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received."

¶ 8     The Amended Complaint also alleges a breach of contract claim for student fees. Defendant and its Universities offered "services, access, benefits and programs" by "specifically describ[ing] the nature and purpose of each fee" in "publications," in particular in "catalogs . . . and website[s.]" Plaintiffs and the proposed fees class then accepted the terms and paid the fees, thereby forming a contract. The Amended Complaint alleges Defendant then breached the contract by shutting down the Universities' campuses and "cancelling most student activities" halfway through the Spring 2020 Term—thereby not providing "recreational and intramural programs; fitness centers or gymnasiums; campus technology[,] infrastructure[,] or security measures; or Spring intercollegiate competitions"—without giving students any "discount or refund" on "any fees" as Defendant does for "fully online students[.]" As a result of Defendant's breach, Plaintiffs and the rest of the proposed class suffered

damages.

¶ 9        The Amended Complaint includes two final breach of contract claims for on-campus housing and meals.  The Amended Complaint alleges Defendant offered the relevant Plaintiffs and proposed classes "on-campus housing" and "meals and on-campus dining options" in return for additional fees.  The relevant Plaintiffs and proposed class members then accepted by paying those fees.  When the Universities shut down their campuses, they "requir[ed] students to move out of on-campus housing facilities" and closed "most campus buildings and facilities, including dining facilities[,]" thereby breaching the contract.  Defendant then "issued arbitrary and insufficient refunds" for on-campus housing and meals for most students because the campus shutdowns started earlier than the date applied to pro-rate the refunds.  According to the Amended Complaint, the relevant Plaintiffs and proposed class members suffered damages for the additional amounts they should have been refunded.

¶ 10        In the alternative to each of the four breach of contract claims, the Amended Complaint alleges unjust enrichment claims.  Each of the claims follows a similar pattern.  The Amended Complaint alleges Plaintiffs and the proposed class "conferred a benefit" non-gratuitously on Defendant by paying the relevant tuition or fees, and Defendant "realized this benefit by accepting such payment."  Plaintiffs and the class members did not receive "the full benefit of their bargain[,]" i.e. the services and

benefits they paid for, but Defendant "retained this benefit" unjustly. The Amended Complaint then alleges "[e]quity and good conscience require" Defendant "return a *pro-rata* portion of the monies paid" as tuition or the relevant fees, especially considering the money Defendant and its Universities saved by operating online rather than in-person, their "billions of dollars in endowment funds," and the "significant aid from the federal government" Defendant received. Finally, the claims request Defendant "be required to disgorge this unjust enrichment[.]"

¶ 11    On 15 January 2021, Defendant filed a "Motion to Dismiss [the] Amended Complaint" under Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) based on five grounds. (Capitalization altered.) First, Defendant argued Plaintiffs' claims were barred by N.C. Gen. Stat. § 116-311, which is part of Article 37 entitled "An Act to Provide Immunity for Institutions of Higher Learning." Next, Defendant contended Plaintiffs' claims were "barred by sovereign immunity." According to Defendant, Plaintiffs also failed to state claims for relief for breach of contract and unjust enrichment, including on the grounds that the Amended Complaint was "an attempt to assert a claim for educational malpractice which is not a cognizable claim under North Carolina state law." Then, Defendant argued the Amended Complaint failed to allege "damages were proximately caused by Defendant." Finally, Defendant contended Plaintiffs lacked standing because they "failed to allege a sufficient injury and they purport to allege claims against [U]niversities with whom they had no

relationship."

¶ 12        The trial court held a hearing on Defendant's Motion to Dismiss on 19 May 2021. At the hearing, Defendant discussed each argument raised in its Motion to Dismiss. When discussing statutory immunity under North Carolina General Statute § 116-311, the parties argued about both the applicability and constitutionality of the statute. Plaintiffs argued the statute was unconstitutional on a number of grounds, including "the federal contracts clause."[2] In addition to arguing Plaintiffs had failed to show § 116-311 was unconstitutional on the merits, Defendant argued Plaintiffs were making a facial constitutional challenge to the statute but had not followed the correct procedure to make such a challenge so Plaintiffs had "waived their right to challenge the statute." Plaintiffs repeatedly argued they were not raising a facial challenge but instead were making an as-applied challenge to the constitutionality of § 116-311. The trial court ended the hearing without making a ruling on Defendant's Motion to Dismiss or any discussion of whether Plaintiffs were making an as-applied or facial challenge to §116-311.

---

[2] Our record does not include information about all the grounds on which Plaintiffs argued § 116-311 was unconstitutional. The transcript only includes this reference to "the federal contracts clause[,]" an argument "this law was passed specifically because of this case[,]" and a couple other references to impairing contracts in violation of the federal Constitution. Based on the transcript, the parties filed briefing on Defendant's Motion to Dismiss, but we do not have those briefs in our record. As a result, we do not know the details of Plaintiffs' arguments before the trial court as to the unconstitutionality of § 116-311.

On 17 June 2021, the trial court entered an order granting Defendant's Motion to Dismiss without specifying the grounds for that decision. On 15 July 2021, Plaintiffs filed a written notice of appeal from the order granting Defendant's Motion to Dismiss.

## II. Analysis

On appeal, Plaintiffs argue, "The trial court erred in granting Defendant's Motion to Dismiss because Plaintiffs adequately plead claims for breach of a contract and unjust enrichment." (Capitalization altered.) As part of this overarching argument, Plaintiffs make five contentions. First, Plaintiffs argue they "state[d] a claim for breach of contract." (Capitalization altered.) Plaintiffs also argue they "state[d] a claim for unjust enrichment." (Capitalization altered.) Third, Plaintiffs assert "Defendant is not entitled to sovereign immunity." (Capitalization altered.) Plaintiffs then contend "N.C. Gen. Stat. § 116-311 is unconstitutional and inapplicable to this action." (Capitalization altered.) That statute grants "institution[s] of higher education . . . immunity from claims" for "tuition or fees paid . . . for the spring academic semester of 2020" when the claims "allege[] losses or damages arising from an act or omission by the institution of higher education during or in response to COVID-19, the COVID-19 emergency declaration, or the COVID-19

essential business executive order."[3]  N.C. Gen. Stat. § 116-311(a) (2021).  Finally, Plaintiffs argue they "hav[e] standing on all claims."  (Capitalization altered.)

¶ 15        We will address Plaintiffs' contentions as to why the trial court erred in granting Defendant's Motion to Dismiss in the following order.  First, we will address the immunity issues—both sovereign immunity and the potential statutory immunity of N.C. Gen. Stat. § 116-311—because of the special nature of immunity as more than "just a mere defense in a lawsuit" in comparison to other defenses raised under Rule of Civil Procedure 12.  *See Lannan v. Board of Governors of the University of North Carolina*, 2022-NCCOA-653, ¶¶ 23, 29 (citation and quotation marks omitted) (when considering the interlocutory nature of an appeal, recognizing this nature of sovereign immunity means its loss affects a substantial right but requiring a petition for writ of certiorari to address the Rule 12(b)(6) failure to state a claim issue); *see also Stahl v. Bowden*, 274 N.C. App. 26, 28, 850 S.E.2d 588, 590 (2020) (recognizing claims of immunity in general, including specifically statutory immunity, affect a substantial right when considering an interlocutory appeal).  Within the two types of immunity, we will address sovereign immunity first because Plaintiffs raise constitutional issues around statutory immunity and "it is well settled that 'the courts of this State will

---

[3] The statute has additional requirements we will discuss more below.  *See* N.C. Gen. Stat. § 116-311(a) (including four subsections of requirements).  We only include enough information here to demonstrate the relevance of Plaintiffs' argument about the statute.

avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds.'" *See Holdstock v. Duke University Health System, Inc.*, 270 N.C. App. 267, 277, 841 S.E.2d 307, 314 (2020) (quoting *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002)). Because we ultimately hold sovereign and/ or statutory immunity bar all of Plaintiffs' claims, we do not reach the remaining issues of stating claims for breach of contract and for unjust enrichment or the standing issue.

**A. Sovereign Immunity**

Focusing on sovereign immunity first, Plaintiffs argue "Defendant is not entitled to sovereign immunity." (Capitalization altered.) Sovereign immunity is at issue because "[s]overeign immunity protects the State and its agencies from suit absent waiver or consent" and "Defendant Board of Governors is an agency of the State" that "can claim the protection of sovereign immunity." *See Lannan*, ¶ 22 (citations and quotation marks omitted). As a result, if Defendant is entitled to sovereign immunity, Plaintiffs' claims are barred and the trial court did not err in dismissing them.

Turning to Plaintiffs' specific arguments against the application of sovereign immunity, Plaintiffs contend as to the contract claims the State, including Defendant as a state agency, waives sovereign immunity when entering into an implied-in-fact contract. Defendant responds only an express contract, not a contract implied-in-fact,

waives sovereign immunity. Then, Defendant contends even if an implied-in-fact contract is sufficient to waive sovereign immunity, "the Amended Complaint is completely void of any factual allegations establishing the existence of even an implied contract." Plaintiffs do not include any argument on the waiver of sovereign immunity for their unjust enrichment claims, which Defendant highlights. After setting out the standard of review, we examine whether Defendant has sovereign immunity first as to the unjust enrichment claims and then as to the contract claims.

¶ 18        At the outset, we note many of these questions have been addressed by this Court's recent decision in *Lannan v. Board of Governors of the University of North Carolina.* That case also involved contract claims arising out of a "switch from in-person to online learning" during the COVID-19 pandemic, although it covered the Fall 2020 Term rather than the Spring 2020 Term at issue in this case. *See Lannan*, ¶¶ 5-6. And in *Lannan* this Court addressed identical issues surrounding the applicability of sovereign immunity to implied-in-fact contract claims. *See id.* ¶¶ 30-31 (involving issues of whether an implied-in-fact contract could waive sovereign immunity and whether the plaintiffs had "pled a valid implied-in-fact contract"). While we now have the benefit of *Lannan* in making our decision, *Lannan* had not come out when the parties originally briefed this case.

### 1. *Standard of Review*

¶ 19        In *Lannan*, this Court explained the standard of review on sovereign immunity

issues as follows:

> Our Supreme Court recently explained an appellate court "reviews a trial court's decision to grant or deny a motion to dismiss based upon the doctrine of sovereign immunity using a de novo standard of review." *State ex rel. Stein* [*v. Kinston Charter Academy*, 379 N.C. 560, 2021-NCSC-163], ¶ 23 (citing *White v. Trew*, 366 N.C. 360, 362–63, 736 S.E.2d 166 (2013)); *see also Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017) ("Questions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo." (quoting *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016))).
>
> To the extent the question of whether Plaintiffs[] pled a valid contract should be reviewed under the standard for orders on motions to dismiss under Rule 12(b)(6), the standard is the same, i.e. de novo. *See State ex rel. Stein*, ¶ 25 n.2 (explaining standard is the same because "the only factual materials presented for the trial court's consideration were those contained in the complaint"); *see also Wray*, 370 N.C. at 46-47, 802 S.E.2d at 898 (stating appellate courts "review appeals from dismissals under Rule 12(b)(6) de novo" immediately before stating same standard for sovereign immunity (quotations and citations omitted)). In conducting such a review of the complaint, appellate courts treat as true the complaint's allegations. *Deminski on behalf of C.E.D. v. State Board of Education*, 377 N.C. 406, 2021-NCSC-58, ¶ 12, 858 S.E.2d 788 ("When reviewing a motion to dismiss, an appellate court considers 'whether the allegations of the complaint, if treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory.'" (quoting *Coley v. State*, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123 (2006))); *see also State ex rel. Stein*, ¶ 25. An appellate court "is not, however, required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true." *Estate of Vaughn v. Pike Elec., LLC*,

230 N.C. App. 485, 493, 751 S.E.2d 227, 233 (2013).
*See id.* ¶¶ 32-33 (brackets from original omitted).

### 2. *Unjust Enrichment Claims*

As Defendant identifies, Plaintiffs do not argue on appeal Defendant consented to suit or otherwise waived its sovereign immunity. Under our Appellate Rules, Plaintiffs have therefore abandoned the issue of whether sovereign immunity was a valid ground on which to dismiss their unjust enrichment claims. *See* N.C. R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

Even if Plaintiffs had argued sovereign immunity did not bar their unjust enrichment claims, we would reject that argument. As this Court recently reaffirmed in *Lannan*, "contracts implied in law, which are also called quasi contracts and which permit recovery based on *quantum meruit*, do not waive sovereign immunity." *See Lannan*, ¶ 37 (citing, *inter alia*, *Whitfield v. Gilchrist*, 348 N.C. 39, 41-42, 497 S.E.2d 412, 414 (1998)). As *Whitfield* in turn explains, "*Quantum meruit* is a measure of recovery for the reasonable value of services rendered *in order to prevent unjust enrichment*. It operates as an equitable remedy based upon a quasi contract or a contract implied in law." *Whitfield*, 348 N.C. at 42, 497 S.E.2d at 414-15 (emphasis added) (citations omitted). Thus, claims for unjust enrichment do not waive sovereign immunity because they involve contracts implied in law. *See M Series Rebuild, LLC*

*v. Town of Mount Pleasant, Inc.*, 222 N.C. App. 59, 67, 730 S.E.2d 254, 260 (2012) ("[W]e decline to imply a contract in law in derogation of sovereign immunity to allow a party to recover under a theory of unjust enrichment." (citation and quotation marks omitted)). Since Plaintiffs have provided no other reason Defendant waived sovereign immunity, their unjust enrichment claims are barred by sovereign immunity. The trial court did not err in dismissing those claims.

### 3. Contract Claims

Turning to Plaintiffs' remaining contract claims, the parties' arguments present two questions: (1) whether a valid implied-in-fact contract can waive sovereign immunity and (2) whether Plaintiffs pled valid implied-in-fact contracts.

*Lannan* answers the first question; "a contract implied in fact can waive sovereign immunity under the contractual waiver holding" in *Smith v. State. See Lannan*, ¶ 51 (referencing *Smith v. State*, 289 N.C. 303, 222 S.E.2d 412 (1976)); *see also Smith*, 289 N.C. at 320, 222 S.E.2d at 423-24 ("[W]henever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract."). *Lannan* reached that conclusion after an extensive analysis of our caselaw on contracts waiving sovereign immunity. *Lannan*, ¶¶ 35-50. *Lannan* also explained the existence of N.C. Gen. Stat. § 116-311, i.e. the basis of the statutory immunity issue here, indicated the General Assembly did not believe the contract

claims were already barred by sovereign immunity because otherwise "[t]here would be no need for this separate immunity statute[.]" *See Lannan*, ¶ 50.

In undertaking that analysis, this Court also rejected the same arguments Defendant now advances when arguing a valid implied-in-fact contract does not waive sovereign immunity. First, the *Lannan* Court rejected Defendant's argument *Whitfield* and *Eastway Wrecker Service, Inc. v. City of Charlotte*, 165 N.C. App. 639, 599 S.E.2d 410 (2004), require an express contract for a waiver of sovereign immunity because those two cases were limited to situations involving contracts implied in law even though they included "overly broad" statements at times. *See Lannan*, ¶¶ 38-41 (analyzing cases before concluding "*Whitfield* and *Eastway Wrecker Service* only allow the State to defend itself based on sovereign immunity against contracts implied in law, not contracts implied in fact").

*Lannan*'s rejection of Defendant's arguments also relied on "another line of cases holding the State waives its sovereign immunity when it enters into a contract implied in fact." *Id.* ¶ 41; *see also*, *id.* ¶¶ 41-43 (full analysis of that line of cases, namely *Archer v. Rockingham County*, 144 N.C. App. 550, 548 S.E.2d 788 (2001), *Sanders v. State Personnel Com'n*, 183 N.C. App. 15, 644 S.E.2d 10 (2007), and *Lake v. State Health Plan for Teachers and State Employees*, 234 N.C. App. 368, 760 S.E.2d 268 (2014)). Defendant here contends those cases were limited to "employment settings" rather than the "educational setting" present here, (emphasis omitted), but

the *Lannan* court rejected a similar argument for several reasons. *See Lannan*, ¶¶ 44-48. First, the reasoning of that line of cases "extends beyond the employment context." *Id.* ¶ 45. Second, "the employment context and the educational context are not so different that we can disregard the cases addressing contracts implied in fact in the employment context." *Id.* ¶ 46. Finally, extending that line of cases "beyond the employment context is consistent with our treatment of implied in fact contracts in general" because "[o]ur Supreme Court has long held 'an implied in fact contract is valid and enforceable as if it were express or written.'" *Id.* ¶ 47 (quoting *Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980)) (brackets omitted).

Since *Lannan* already determined a "contract implied in fact can waive sovereign immunity[,]" we turn to the remaining question, whether Plaintiffs pled a valid implied-in-fact contract. *See id.* ¶ 51. "[T]o plead a valid implied-in-fact contract, Plaintiffs needed to plead offer, acceptance, and consideration." *Id.* ¶ 54. We examine this issue as to each of the four contract claims: tuition, student fees, on-campus housing, and meals.

Plaintiffs adequately pled their tuition claim. Specifically, the Amended Complaint alleges "Defendant offered to provide, and members of the Tuition class expected to receive, instruction on a physical campus" rather than the "separate and distinct product[]" of "online distance education" based on: (1) Defendant and the Universities' "website[s], academic catalogues, student handbooks, marketing

materials and other circulars, bulletins, and publications" that differentiate between "fully online" programs and "non-online" programs with "references to and promises about the on-campus experience," which Plaintiffs included examples of in the Amended Complaint; (2) differences in how students register for on-campus versus online instruction; and (3) "the parties' prior course of conduct" in starting classes "for which students expected to receive in-person instruction" with such instruction and with class materials with in-person "schedules, locations, and . . . requirements." Turning to acceptance, Plaintiffs allege they accepted the offer for "live, in-person education" by "paying tuition and attending classes during the beginning of the Spring 2020" Term. Finally, the Amended Complaint states Plaintiffs and the proposed class "paid valuable consideration in exchange" for in-person learning, which refers back to the tuition money they paid to accept the offer.

¶ 28       For the student fees contract claim, Plaintiffs allege Defendant "[i]n its publications and, particularly in its catalogs and website" described the "purpose of each fee" such that everyone understood "the monies Plaintiff[s] and other members of the [proposed class] paid towards these fees were intended . . . to cover the services, access, benefits and programs for which the fees were described and billed," thereby constituting an offer. The Amended Complaint includes various descriptions of these fees. Plaintiffs then allege they paid the fees to the Universities, which constituted acceptance and consideration and therefore formed a contract.

¶ 29    Similarly, as to the on-campus housing and meals claims, the Amended Complaint alleges the Universities offered "on-campus housing" and "meals and on-campus dining options" to students who agreed to pay certain fees. As pled, the students then accepted those offers and gave consideration when they paid the required fees to receive on-campus housing or dining and meals. Thus, Plaintiffs adequately pled a valid implied-in-fact contract as to each of the four contract claims.

¶ 30    None of Defendant's arguments persuade us otherwise. While Defendant's section on sovereign immunity only includes a single sentence arguing "the Amended Complaint is completely void of any factual allegations establishing the existence of even an implied contract," Defendant later includes additional arguments about the ways in which "Plaintiffs' Amended Complaint fails to identify a contract" in its section on how Plaintiffs failed to state a claim for breach of contract. (Capitalization altered.) Specifically, Defendant first argues "every contract requires a promise" and Plaintiffs did not include any such allegations of promises or, specifically, promises to refunds. This argument is partially premised on two cases, *Ryan v. University of North Carolina Hospitals*, 128 N.C. App. 300, 494 S.E.2d 789 (1998) and *Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 781 S.E.2d 511 (2016), that, according to Defendant, require allegations to be based on "identifiable contractual promises" such that "statements made in a university policy manual or other university publication are insufficient to support a breach of contract claim

unless they are explicitly included or incorporated into a contract." (Emphasis omitted.)

¶ 31 Defendant's contention the Amended Complaint does not allege promises underlying a contract cannot be squared with the pleading. While the Amended Complaint does not include the specific term "promise" when describing what the Universities offered to students, the offers constitute promises to act nonetheless. As laid out above, the Universities offered in-person education, benefits as described in the student fee descriptions, and on-campus housing and meals according to the Amended Complaint. Those offers were promises to provide those services if Plaintiffs and other members of the proposed classes paid the fees. In other words, by their acceptance and payment of consideration, Plaintiffs converted Defendant's offer into promises. *See Wilkins v. Vass Cotton Mills*, 176 N.C. 72, 81, 97 S.E. 151, 155 (1918) ("An acceptance by promise or act, and communication thereof when necessary, while an offer of a promise is in force, changes the character of the offer. It supplies the elements of agreement and consideration, changing the offer into a binding promise, and the offer cannot afterwards be revoked without the acceptor's consent." (citation and quotation marks omitted)). Thus, by properly alleging the contract, Plaintiffs have pled a promise necessary to form a contract.

¶ 32 Defendant's reliance on *Ryan* and *Montessori Children's House* is also misplaced. As this Court explained in *Lannan*, *Ryan* and *Montessori Children's*

*House* both involved pre-existing written contracts. *See Lannan*, ¶¶ 57-58. As such, they differ from the case here where Plaintiffs allege the statements made in university publications "are the contract." *See id.* ¶ 62. And thus their statements about requiring an "identifiable contractual promise" or incorporation of publications into a contract do not apply here to bar Plaintiffs' contract claims. *See id.* ¶¶ 57-58 (citation and quotation marks omitted).

¶ 33        Next, Defendant argues none of the described fees "support[] Plaintiffs' claim that a contract exists entitling them to a refund for fees in the event the format of instruction changed" because Plaintiffs did not plead they took advantage of services, services ceased with the shift to online learning, or the pre-existing refunds for meals and housing were insufficient. First, while these arguments are under a heading labeled "Plaintiffs' Amended Complaint fails to identify a contract and thus fails to state a contract claim[,]" they address breach because they all focus on the provision of services or remedy for lack of the allegedly contracted for services. This matters because the waiver of sovereign immunity only requires pleading a valid contract, not pleading breach; pleading breach is only relevant when looking at Rule of Civil Procedure 12(b)(6) and dismissal for failure to state a claim. *See Lannan*, ¶¶ 27-28 (explaining a valid contract is necessary to both waive sovereign immunity and survive a Rule 12(b)(6) motion to dismiss but breach is also necessary to state a breach of contract claim that survives such a motion) and ¶ 66 (addressing only

breach to rule on 12(b)(6) motion to dismiss contract claims because this Court had "already determined above [the p]laintiffs pled a valid contract").

¶ 34 Even if Defendant's arguments on breach could impact whether Plaintiffs pled a valid contract sufficient to waive sovereign immunity, we would still reject its contentions. As to the contention Plaintiffs did not plead they took advantage of the services for which they paid student fees, the Amended Complaint alleges "as a result of being moved off campus," Plaintiffs and the proposed class "no longer have the benefit of the services for which these fees have been paid" and lists numerous services. The language "no longer" suggests the Plaintiffs had used the services in the past. Further, some of the services, such as "campus . . . security measures" are things Plaintiffs would passively benefit from rather than actively take advantage of in many circumstances. As to Defendant's argument Plaintiffs failed to plead services ceased when students shifted to online instruction, the Amended Complaint plainly states that transition included "closing most campus buildings and facilities, and cancelling most student activities." That followed a more specific allegation that "as a result of being moved off campus" Plaintiffs "were unable to participate in recreational and intramural programs; no longer had access to campus fitness centers or gymnasiums; no longer benefit[t]ed from campus technology[,] infrastructure[,] or security measures; and no longer had the benefit of enjoying Spring intercollegiate competitions." The Amended Complaint also includes allegations detailing why the

refunds for housing and meals failed to fully reimburse Plaintiffs for the services they could not access due to campus shutdowns by calculating the dates of the shutdowns versus the dates upon which the refunds were based.

¶ 35    Finally, Defendant argues "Plaintiffs' claims are veiled educational malpractice claims which are not allowed in North Carolina," again relying on *Ryan* as the only binding authority.  (Capitalization altered.)  While Defendant is correct North Carolina does not permit educational malpractice claims, *see Ryan*, 128 N.C. App. at 302-03, 494 S.E.2d at 791 (only permitting claim to go forward because it "would not involve an inquiry into the nuances of educational processes and theories" (quotation marks omitted)), Plaintiffs are not making such a claim.  In *Ryan*, this Court clarified educational malpractice claims require "an inquiry into the nuances of educational processes and theories." *See id.* at 302, 494 S.E.2d at 791.  The *Ryan* Court also relied heavily on a Seventh Circuit case that clarified an educational malpractice claim alleged "the school breached its agreement by failing to provide an effective education" or "simply . . . that the education was not good enough." *See id.* (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416-17 (7th Cir. 1992)).

¶ 36    Reviewing Plaintiffs' contract claims does not require an investigation into educational processes or theories or a determination of whether the education was adequate.  The student fees, housing, and meals claims do not involve education practices at all; they involve separate amenities Plaintiffs allege they paid to access

as discussed above. And Plaintiffs' tuition claim alleges they paid for "live, in-person, on-campus education" but instead received instruction via "online distance learning platforms[.]" Defendants do not indicate any place where Plaintiffs' tuition claim turns on whether one of those types of education is better than the other in terms of educational quality. Defendant's best argument to the contrary is that calculating damages for Plaintiffs' tuition claim would require determining "the difference in value between in-person and distance learning." But the trial court would not need to do that in the future if this case reaches a damages stage because Defendant has already set different tuitions for on-campus and distance learning programs according to the allegations in the Amended Complaint. At its heart, Plaintiffs' tuition claim alleges they contracted and paid for product A and received product B for part of the Spring 2020 Term. Products A and B can represent anything in that scenario, demonstrating that the claim does not rely on reviewing educational processes or even on the educational setting itself.

¶ 37 Having rejected all Defendant's arguments, we conclude after our *de novo* review sovereign immunity does not bar Plaintiffs' contract claims, although it does bar their unjust enrichment claims.

**B. Statutory Immunity**

¶ 38 As the contract claims survive sovereign immunity, we next turn to statutory immunity. As explained above, Plaintiffs argue N.C. Gen. Stat. § 116-311, which

provides immunity to claims for tuition and fees for COVID-19 related university closures, "is unconstitutional and inapplicable to this action." (Capitalization altered.) *See* N.C. Gen. Stat. § 116-311(a). Following the doctrine of constitutional avoidance, *see Holdstock*, 270 N.C. App. at 277, 841 S.E.2d at 314 ("[T]he courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds."), we will first consider whether § 116-311 is applicable here and then address the constitutionality of the statute.

### 1. *Applicability of North Carolina General Statute § 116-311*

¶ 39          Plaintiffs first argue § 116-311 is "inapplicable to this action." (Capitalization altered.) North Carolina General Statute § 116-311 provides, in relevant part:

> Notwithstanding any other provision of law and subject to G.S. 116-312, an institution of higher education shall have immunity from claims by an individual, if all of the following apply:
>
> > (1) The claim arises out of or is in connection with tuition or fees paid to the institution of higher education for the spring academic semester of 2020.
> > (2) The claim alleges losses or damages arising from an act or omission by the institution of higher education during or in response to COVID-19, the COVID-19 emergency declaration, or the COVID-19 essential business executive order.
> > (3) The alleged act or omission by the institution of higher education was reasonably related to protecting the public health, safety, or welfare in response to the COVID-19 emergency declaration, COVID-19 essential business executive order, or applicable guidance from the Centers for Disease

> Control and Prevention.
> (4) The institution of higher education offered remote learning options for enrolled students during the spring academic semester of 2020 that allowed students to complete the semester coursework.

N.C. Gen. Stat. § 116-311(a). Plaintiffs' first argument is that the "plain meaning of this statute is to provide immunity for tort claims" because it includes the language "act or omission." Plaintiffs also contend "Defendant's refusal to provide fair tuition and [fee] refunds" is not "reasonably related to protecting public health or safety."

As questions of statutory interpretation, we review Plaintiffs' arguments *de novo. See Winkler v. North Carolina State Board of Plumbing*, 374 N.C. 726, 730, 843 S.E.2d 207, 210 (2020) ("Thus, this case presents an issue of statutory interpretation, which we review de novo." (citing *Applewood Props., LLC v. New S. Props., LLC*, 366 N.C. 518, 522, 742 S.E.2d 776, 779 (2013))). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Id.* (quoting *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (brackets omitted)).

Section 116-311(a), by its plain language, provides "immunity from claims[.]" N.C. Gen. Stat. § 116-311(a). Plaintiffs argue the term claims should be limited to tort claims, and thus not cover their contract claims, because the claim must "allege[]"

losses or damages arising from an act or omission." N.C. Gen. Stat. § 116-311(a)(2). But this argument ignores the statutory definition of claims. N.C. Gen. Stat. § 116-310 defines "Claim" as, "A claim or cause of action seeking any legal or equitable remedy or relief" for the purpose of the article on "Covid-19 Immunity for Institutions of Higher Education," which includes § 116-311. N.C. Gen. Stat. § 116-310(1) (2021). That definition includes any claim or cause of action that could be brought, so it necessarily includes Plaintiffs' contract claims, and, as an alternative basis for our decision, Plaintiffs' unjust enrichment claims. "If a statute 'contains a definition of a word used therein, that definition controls.'" *Lovin v. Cherokee County*, 248 N.C. App. 527, 529, 789 S.E.2d 869, 871 (2016) (quoting *In re Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202 (1974)). Therefore, we reject Plaintiffs' argument the statutory immunity provided by § 116-311 applies only to tort claims; it applies to all claims, including all of Plaintiffs' contract and unjust enrichment claims.

¶ 42        The remainder of § 116-311 provides five requirements for immunity to apply. First, the statute imports the limits provided in § 116-312, which limits the timeframe of the immunity to "alleged acts or omissions occurring on or after the issuance of the COVID-19 emergency declaration until June 1, 2020." *See* N.C. Gen. Stat. § 116-311 (making clear the immunity is "subject to G.S. 116-312"); N.C. Gen. Stat. § 116-312 (including quoted language on timeframe of immunity). Then, § 116-311 has the four individually numbered requirements listed above.

¶ 43   Of these five requirements, Plaintiffs only contest the requirement in § 116-311(a)(3) that the "alleged act or omission by the institution of higher education was reasonably related to protecting the public health, safety, or welfare in response to . . . COVID-19 . . . ." N.C. Gen. Stat. § 116-311(a)(3). Specifically, Plaintiffs contend "Defendant's refusal to provide fair tuition and [fee] refunds" is not "reasonably related to protecting public health or safety." In making that argument, Plaintiffs misunderstand the relevant "alleged act or omission." N.C. Gen. Stat. § 116-311(a)(3). The alleged act or omission that gave rise to Plaintiffs' claims was, at least in part, Defendant and its Universities shutting down their campuses and moving classes online according to Plaintiffs' own Amended Complaint. For example, the tuition contract claim explains: "However, the University breached the contract with Plaintiffs and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly." Similarly, the tuition unjust enrichment claim states:

> Instead, Plaintiffs and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

And Plaintiffs' Amended Complaint also pleads the shift to online instruction was a result of the COVID-19 pandemic: "On or about March 11 , 2020, *in response to the COVID-19 pandemic*, Defendant issued a system-wide directive to all constituent institutions requiring that they transition from in-person to online instruction no later than March 23, 2020." (Emphasis added.) As part of that paragraph on the transition to online instruction, Plaintiffs include a footnote to a press release on Defendant's website about the directive, which clarifies the decision to transition to online classes was related to "the health and safety of [the Universities'] students, faculty, and staff . . . ." *UNC System Issues Update on Coronavirus Preparations*, The University of North Carolina System (Mar. 12, 2020).[4] Thus, contrary to Plaintiffs' argument, the alleged acts or omissions were "reasonably related to protecting the public health, safety, or welfare in response to . . . COVID-19 . . . ." N.C. Gen. Stat. § 116-311(a)(3).

The remaining four requirements for statutory immunity under § 116-311(a) are also met here. As to timing, the above allegation about the system-wide directive indicates the decision to shift to online learning was announced on 11 March 2020. Governor Roy Cooper had already entered "the first of many emergency orders . . . in response to the COVID-19 pandemic" on 10 March 2020, *Hall v. Wilmington Health,*

---

[4]    Available    at:    https://www.northcarolina.edu/news/unc-system-issues-update-on-coronavirus-preparations/.

*PLLC*, 282 N.C. App. 463, 2022-NCCOA-204, ¶ 6; *see also* E.O. 116, Cooper, 2020, § 1 (declaring a state of emergency based on "the public health emergency posed by COVID-19"), which started the period of immunity under § 116-312. *See* N.C. Gen. Stat. § 116-312 (applying immunity to "alleged acts or omissions occurring on or after the issuance of the COVID-19 emergency declaration until June 1, 2020"). The remaining actions related to the campus shutdowns all took place within this time period as well.

Turning to the next requirement, the claims all arose "out of or [are] in connection with tuition or fees . . . for the spring academic semester of 2020." *See* N.C. Gen. Stat. § 116-311(a)(1). The Amended Complaint's introduction explains the claims arise from "Defendant's decision not to issue appropriate refunds for the Spring 2020 semester" for "tuition, housing, meals, fees and other costs that Defendant failed to deliver for the second half of the Spring 2020 semester . . . ." Similarly, the four groups of claims (one each for breach of contract and unjust enrichment) are for: tuition, student fees, on-campus housing fees, and meal fees. Further, as we have already discussed, the actions by Defendant and the Universities were taken "in response to COVID-19[.]" *See* N.C. Gen. Stat. § 116-311(a)(2). Finally, Plaintiffs acknowledge "[f]rom March 23, 2020 through the end of the Spring 2020 semester, there were no in-person classes at Defendant's institutions, *and all instruction was delivered online*[,]" (emphasis added), thereby meeting the final

requirement in § 116-311(a)(4).  *See* N.C. Gen. Stat. § 116-311(a)(4).

¶ 46        Since all the statutory requirements are met here, § 116-311(a) applies to Plaintiffs' claims, both their contract claims and their unjust enrichment claims. Thus, after our *de novo* review and under the statute's plain language, Defendant has immunity from these claims.  N.C. Gen. Stat. § 116-311(a).

### 2. *Constitutionality of North Carolina General Statute § 116-311*

¶ 47        Having decided § 116-311 applies to Plaintiffs' claims and grants Defendant immunity, we now address Plaintiffs' argument the statute is unconstitutional. Plaintiff argues the law is unconstitutional for five reasons: (1) "such a law squarely violates U.S. Con[s]t. art. I, § 10 cl. 1 which reads, in pertinent part, '[n]o State shall . . . pass any . . . law impairing the Obligation of Contracts[;]'" (2) "the statute would violate the equal protection clause of both the United States and North Carolina Constitutions[;]" (3) "the statute violates the due process clauses of the United States and North Carolina Constitutions[;]" (4) "the statute would violate U.S. Const. amend. V which prohibits the taking of private property without just compensation[;]" and (5) "the statute intrudes upon the separation of powers because it is a law that was passed in response to specific litigation already pending in the courts with the purposes of directing the courts on how to adjudicate the pending actions."

¶ 48        Before arguing § 116-311 "is not unconstitutional[,]" Defendant contends "Plaintiffs have waived any purported constitutional challenges to" the statute.  After

discussing the standard of review, we first review whether Plaintiffs have waived the issue and then the merits of Plaintiffs' argument the statute is unconstitutional.

### a. *Standard of Review*

¶ 49    For challenges under both the federal and State Constitutions, we review the constitutionality of statutes *de novo*. *See North Carolina Ass'n of Educators, Inc. v. State*, 368 N.C. 777, 786, 786 S.E.2d 255, 262 (2016) (stating, in a case where a party argued a statute was unconstitutional under Article I, § 10 of the United States Constitution, "we review de novo any challenges to a statute's constitutionality"); *Cooper v. Berger*, 376 N.C. 22, 33, 36, 852 S.E.2d 46, 56, 58 (2020) (stating, in a case challenging the constitutionality of a statute under our State Constitution, "[a]ccording to well-established North Carolina law," appellate courts "review[] constitutional questions using a de novo standard of review"). "In exercising de novo review, we presume that laws enacted by the General Assembly are constitutional, and we will not declare a law invalid unless we determine that it is unconstitutional beyond a reasonable doubt." *Cooper*, 376 N.C. at 33, 852 S.E.2d at 56 (citation and quotation marks omitted); *see also North Carolina Ass'n of Educators*, 368 N.C. at 786, 786 S.E.2d at 262 ("This Court presumes that statutes passed by the General Assembly are constitutional, and duly passed acts will not be struck unless found unconstitutional beyond a reasonable doubt[.]" (citations omitted)).

### b. *Waiver*

¶ 50 In its waiver argument, Defendant specifically asserts "[a] facial constitutional challenge to a state statute is governed by the procedure found in N.C. Gen. Stat. §§ 1-267.1, 1-81.1, and [1A-1,] N.C. R. Civ. P. 42(b)(4)." Defendant alleges "Plaintiffs failed to comply with the requirements of Rule 42(b)(4)[5] for raising a facial challenge to the constitutionality" of § 116-311 and thus "have waived their ability to do so."

¶ 51 Defendant's argument rests on a faulty premise because Plaintiffs only raised as-applied constitutional challenges below. During the hearing on Defendant's Motion to Dismiss the Amended Complaint, Plaintiffs' attorney emphasized four separate times they were making as-applied challenges:

- "The first thing I will say and that I want to make very clear is that we have not made a facial challenge to the statute. We are alleging as applied in this case, as they wish to apply it, it is unconstitutional particularly among a number of other sections against the federal contracts clause."

- "Again, I would posit that we are not making a facial challenge but an

---

[5] The requirements of Rule 42(b)(4) control the application of the other two statutes Defendant previously mentioned, §§ 1-267.1 and 1-81.1. *See Holdstock*, 270 N.C. App. at 273, 276, 841 S.E.2d at 312, 314 (explaining how Rule 42(b)(4) "limits the application of N.C.G.S. § 1-267.1(a1)" and then discussing how § 1-81.1 also "restricts" its "requirement to only properly raised challenges as set forth in Rule 42(b)(4)" (emphasis from original omitted)).

as-applied challenge."

- "We're making an as-applied challenge."

- **"**That is not what we're trying to do is make a facial challenge to this."

¶ 52    The as-applied nature of the challenge matters because the statutes Defendant directs our attention towards "only apply to 'facial challenges to the validity of an act of the General Assembly, not as applied challenges.'"  *See Cryan v. National Council of Young Men's Christian Associations of the United States*, 280 N.C. App. 309, 2021-NCCOA-612, ¶ 19 (quoting *Holdstock*, 270 N.C. App. at 271, 841 S.E.2d at 311).  And Plaintiffs clarifying they were not making a facial challenge, combined with the lack of a trial court ruling that Plaintiffs were actually making a facial challenge, means no facial challenge was made to trigger the requirements set out by §§ 1-267.1, 1-81.1, and 1A-1, Rule 42.  *See Cryan*, ¶ 21 ("As Defendant made clear they were only making an as applied challenge to the 2019 amendments, and the trial court did not make a determination itself that Defendant's constitutional challenges were in fact a facial challenge, no facial challenge was made in the time prescribed by Rule 42(b)(4) for a court to be able to transfer a facial challenge to a three-judge panel.").

¶ 53    Although Plaintiffs argued their constitutional challenge was only an as-applied claim, we recognize that Plaintiffs' own characterization of the claim is not necessarily the end of the analysis.  Recently, this Court in *Kelly v. State* held "a court is not restricted *per se* by a party's categorization of its challenge as facial or as-

applied and may conduct its own review to determine whether the party's challenge is facial or as-applied." *Kelly v. State*, 2022-NCCOA-675, ¶ 23. As Judge Hampson's dissent in *Kelly* indicates, *id.* ¶¶ 47-48 (Hampson, J. Dissenting), this holding may conflict with *Cryan* because *Cryan* focused primarily on whether a party itself said they were making a facial or as-applied challenge. *Cryan*, ¶ 21 ("As [the d]efendant made clear they were only making an as applied challenge . . . no facial challenge was made . . . ."). If the tests from *Cryan* and *Kelly* were to lead to different outcomes, we would need to address this potential conflict in precedent. *See, e.g., Huml v. Huml*, 264 N.C. App. 376, 395, 826 S.E.2d 532, 545 (2019) (explaining how to resolve "a conflict in cases issued by this Court addressing an issue").

¶ 54        But we do not need to address this potential conflict in precedent. Whether we apply the test announced in *Kelly* or we rely upon *Cryan*, the result is the same: Plaintiffs' challenge to § 116-311 here is an as-applied challenge. *See Kelly*, ¶¶ 24, 26 (setting out test for "determining whether a challenge is as-applied or facial"). The *Kelly* Court explained the test to differentiate between as-applied and facial challenges requires a court to "look to the breadth of the remedy requested." *Kelly*, ¶ 24. The *Kelly* Court then differentiated between the two types of challenges:

> A claim is properly classified as a facial challenge if the relief that would accompany it "reach[es] beyond the particular circumstances of these plaintiffs." *Doe* [*v. Reed*], 561 U.S. [186,] 194, 130 S. Ct. [2811,] 2817, 177 L. Ed. 2d [493,] 501. A claim is properly classified as an as-applied

> challenge if the remedy "is limited to a plaintiff's particular
> case." *Libertarian Party v. Cuomo*, 300 F. Supp. 3d 424, 439
> (W.D.N.Y. 2018), *overruled on other grounds by N.Y. State
> Rifle & Pistol Ass'n v. Bruen*, --- U.S. ----, 142 S. Ct. 2111,
> 213 L. Ed. 2d 387 (2022).

*Id.* (first brackets in original). In *Kelly*, this Court determined the plaintiffs made a facial challenge because (1) the relief requested "would, if successful, effectively preclude all enforcement of the statute[;]" and (2) the plaintiffs did not allege any facts from which an as-applied determination could be made because they had not sought to be part of the challenged program. *Id.* ¶¶ 27-31 (citations and quotation marks omitted).

Here, examining Plaintiffs' challenge with *Kelly*'s test, we again conclude Plaintiffs have made an as-applied challenge. First, looking at the relief requested, *see id.* ¶ 28, Plaintiffs made the constitutional challenge in the context of their specific case where they are seeking to recover money they and the proposed classes paid for tuition, fees, on-campus housing, and meals. This situation differs from *Kelly* where the plaintiffs sought a declaratory judgment the challenged program was unconstitutional and a permanent injunction against continued operation of that program. *See id.* ¶ 27. Here, we could find an as-applied constitutional violation that opens a limited pathway to allow Plaintiffs and the proposed class to recover the monies they seek without "effectively preclude[ing] all enforcement" of § 116-311 since Plaintiffs do not seek a declaratory judgment that the statute is

unconstitutional or injunctive relief barring its enforcement. *See id.* ¶ 28. Plaintiffs merely seek a ruling § 116-311 cannot be used to grant Defendant immunity from *their* lawsuit. For example, they argued before the trial court: "That is not what we're trying to do is make a facial challenge to this. I don't care whether the state and Lenoir-Rhyne or Gardner-Webb try to enforce this immunity on any other students that might run this. I'm concerned about the case that I've brought."

Further, unlike the plaintiffs in *Kelly*, Plaintiffs here could and did allege facts on which an as-applied constitutionality determination could be made because they were impacted by the challenged statute. *See id.* ¶ 30. For example, Plaintiffs' attorney argued below the challenge was partially based on "the federal contracts clause." As discussed above, Plaintiffs' Amended Complaint alleges they personally entered into contracts with the Universities, so they could challenge § 116-311 on the ground it impaired their contracts specifically. *See North Carolina Ass'n of Educators*, 368 N.C. at 786, 786 S.E.2d at 262 (explaining the Contract Clause of the United States Constitution bars a state from passing "any Law impairing the Obligation of Contracts" (quoting U.S. Const. art. I, § 10 (ellipses omitted))). Although we do not have in our record Plaintiffs' precise arguments before the trial court on this ground, *see* Fn. 2, *supra*, their separation of powers argument demonstrates the as-applied nature of their challenge to § 116-311 even more clearly. On appeal, Plaintiffs argue § 116-311 unconstitutionally "intrudes upon the

separation of powers because it is a law that was passed in response to specific litigation already pending in the courts with the purposes of directing the courts on how to adjudicate the pending actions." This argument relies on when Plaintiffs filed their specific lawsuit, i.e. before the General Assembly passed the immunity statute, so it necessarily relies on facts "specific to" Plaintiffs "from which to determine whether the statute is unconstitutional as applied." *See Kelly*, ¶ 30 (requiring such facts for a challenge to be as-applied).

Under both of *Kelly*'s factors, *see id.* ¶¶ 27-31, Plaintiffs here make an as-applied challenge to the immunity statute. Thus, applying *Kelly*'s test, we reach the same conclusion as our previous analysis based on *Cryan*. Therefore, we reject Defendant's argument Plaintiffs have waived their constitutional challenges to § 116-311 and the statutory immunity it provides against Plaintiffs' claims.

*c. Merits*

Turning to the merits, Plaintiffs argue § 116-311 is unconstitutional on five grounds: (1) the United States Constitution's clause barring states from impairing contracts; (2) the Equal Protection Clauses of the United States and North Carolina Constitutions; (3) the Due Process Clauses of the United States and North Carolina Constitutions; (4) the Takings Clause in the Fifth Amendment of the United States Constitution; and (5) the separation of powers doctrine. We address each of those five arguments in turn.

¶ 59        Under the Contract Clause of the United States Constitution, "no State shall pass any Law impairing the Obligation of Contracts." *North Carolina Ass'n of Educators*, 368 N.C. at 786, 786 S.E.2d at 262 (quoting U.S. Const. art. I, § 10) (ellipses and brackets omitted).  Our courts use a three-factor test to "determine whether a Contract Clause violation exists." *Id.* (citing *Bailey v. State*, 348 N.C. 130, 141, 500 S.E.2d 54, 60 (1998)).  That test, adopted from the Supreme Court of the United States's decision in *U.S. Trust Co. of N.Y. v. New Jersey*, "requires a court to ascertain: (1) whether a contractual obligation is present, (2) whether the state's actions impaired that contract, and (3) whether the impairment was reasonable and necessary to serve an important public purpose." *Bailey*, 348 N.C. at 140-41, 500 S.E.2d at 60 (citing *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 52 L.Ed.2d 92 (1977)).  Here, we have already determined Plaintiffs pled a valid contractual obligation when we decided the contract claims survived sovereign immunity, thereby meeting the first prong of the test.  Assuming *arguendo* the second prong, impairment of the contract, is met, Plaintiffs fail at the third prong.

¶ 60        The third prong, "whether the impairment was reasonable and necessary to serve an important public purpose[,]" recognizes "[n]ot every impairment of contractual obligations by a state violates the Contract Clause" because the state can still permissibly use its police power. *Bailey*, 348 N.C. at 151, 500 S.E.2d at 66 (citing *U.S. Trust Co.*, 431 U.S. at 21, 25-26, 52 L.Ed.2d at 109, 111-12).  The third prong

"involves a two-step process, first identifying the actual harm the state seeks to cure, then considering whether the remedial measure adopted by the state is both a reasonable and necessary means of addressing that purpose." *North Carolina Ass'n of Educators*, 368 N.C. at 791, 786 S.E.2d at 265 (citing *Energy Reserves Group, Inc. v. Kansas Power and Light Co.*, 459 U.S. 400, 412, 74 L.Ed.2d 569, 581 (1983)); *see also Lake v. State Health Plan for Teachers and State Employees*, 380 N.C. 502, 2022-NCSC-22, ¶ 64 (quoting that portion of *North Carolina Ass'n of Educators*).

¶ 61        Here, the Article on immunity explains the purpose of the statute: "It is a matter of vital State concern affecting the public health, safety, and welfare that institutions of higher education continue to be able to fulfill their educational missions during the COVID-19 pandemic without civil liability for any acts or omissions for which immunity is provided in this Article." N.C. Gen. Stat. § 116-313 (2021). In *North Carolina Ass'n of Educators*, our Supreme Court explained "maintaining the quality of the public school system is an important purpose." *See North Carolina Ass'n of Educators*, 368 N.C. at 791, 786 S.E.2d at 266. While the case did so in the context of elementary and secondary school public education, *see id.* at 781, 786 S.E.2d at 259 (referencing history of N.C. Gen. Stat. § 115C-325 (2012)); N.C. Gen. Stat. Chapter 115C (covering elementary and secondary education), the quality of post-secondary education is also an important purpose for the State, especially when it has decided to create a public university system to, *inter alia*,

"improve the quality of education[.]" *See* N.C. Gen. Stat. § 116-1(a) (2021) ("In order to foster the development of a well-planned and coordinated system of higher education, to improve the quality of education, to extend its benefits and to encourage an economical use of the State's resources, the University of North Carolina is hereby redefined in accordance with the provisions of this Article.").

¶ 62      Turning to the second part of the third prong, we must determine "whether the remedial measure adopted by the state is both a reasonable and necessary means of addressing that purpose." *See North Carolina Ass'n of Educators*, 368 N.C. at 791, 786 S.E.2d at 265. The immunity statute was a reasonable means of ensuring the quality of education because it allowed the Universities to focus on how to best deliver education online rather than trying to continue in person and expending resources on all the public health measures necessary to try to achieve that prospect safely. With the benefit of hindsight, there are many different opinions on the effectiveness or wisdom of closures of educational institutions as a response to the COVID-19 pandemic, but this Court need not attempt to resolve these questions as they are not presented by this case. The General Assembly limited the application of N.C. Gen. Stat. §116-311 to the spring semester of 2020 only, and this was the only semester during which the Universities had to deal with an immediate response to the COVID-19 pandemic for students who were already enrolled and on campus when the Governor's Emergency Directives were issued. *See* N.C. Gen. Stat. § 116-311(a)(1)

("The claim arises out of or is in connection with tuition or fees paid to the institution of higher education for the spring academic semester of 2020."); *see generally* E.O. 116, Cooper, 2020, § 1 (first COVID-19 Emergency Directive). The immunity statute was a reasonable response to the COVID-19 pandemic at the time it was adopted, in the context of the Governor's Emergency Directives. *See, e.g.* E.O. 116, Cooper, 2020, § 1 (declaring a state of emergency based on "the public health emergency posed by COVID-19"); E.O. 120, Cooper, 2020, § 4 (closing other educational institutions, namely public schools, from 16 March 2020 to 15 May 2020 pursuant to, *inter alia*, the state of emergency); E.O. 121, Cooper, 2020, § 1-2, 7 (imposing a 30-day stay-at-home order effective 30 March 2020 pursuant to, *inter alia*, the state of emergency with a limited exception for educational institutions, including public colleges and universities, only for "facilitating remote learning, performing critical research, or performing essential functions, provided" social distancing of at least six feet from other people was respected). The statute was also a necessary response to the COVID-19 pandemic and the need to ensure educational quality during the early days of the pandemic. Removing the possibility of liability from the Universities ensured they could shift to online learning and focus on education without worrying about either public health measures to continue in person or the prospect of lawsuits arising from having to change the method of instruction mid-semester. Put another way, it is unclear what else the General Assembly could have done to achieve the same goal

of ensuring the focus was on continuing the Universities' educational mission in light of the uncertainty caused by the early days of the COVID-19 pandemic. Because we find the immunity statute to be reasonable and necessary, we reject Plaintiffs' argument the statute violates the federal Constitution's Contract Clause.

Second, Plaintiffs argue § 116-311 violates the equal protection clauses of the federal and State Constitutions because it "aimed at protecting only one group of specific entities[,]" Defendant and its Universities "against the claims of another specific group" and did not extend to other industries that also "suffered financially from the pandemic" such as "[g]yms, restaurants, and countless other businesses . . . forced to close their physical locations." Since Plaintiffs' argument rests on differing classifications of universities versus other businesses affected by the COVID-19 pandemic, the tests under the federal and State Constitutions are identical. *See Liebes v. Guilford County Dept. of Public Health*, 213 N.C. App. 426, 428, 724 S.E.2d 70, 72 (2011) ("Our courts use the same test as federal courts in evaluating the constitutionality of challenged classifications under an equal protection analysis." (quoting *Richardson v. N.C. Dept. of Correction*, 345 N.C. 128, 134, 478 S.E.2d 501, 505 (1996))). This Court has described those tests as follows:

> Upon the challenge of a statute as violating equal protection, our courts must "first determine which of several tiers of scrutiny should be utilized" and then whether the statute "meets the relevant standard of review." *Department of Transp. v. Rowe*, 353 N.C. 671, 675,

> 549 S.E.2d 203, 207 (2001). Where "[t]he upper tier of equal protection analysis requiring strict scrutiny of a governmental classification applies only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class," we apply the lower tier or rational basis test if the statute neither classifies persons based on suspect characteristics nor impinges on the exercise of a fundamental right. *White v. Pate*, 308 N.C. 759, 766-67, 304 S.E.2d 199, 204 (1983).

*See Liebes*, 213 N.C. App. at 428-29, 724 S.E.2d at 72-73. Here, Plaintiffs do not argue any suspect classification or fundamental right is involved, so we apply only rational basis. *See id.* at 428-29, 724 S.E.2d at 73.

"The pertinent inquiry under rational basis scrutiny is whether the 'distinctions which are drawn by a challenged statute or action bear some rational relationship to a conceivable legitimate governmental interest.'" *Id.* at 429, 724 S.E.2d at 73 (quoting *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980)). While we need not determine the actual purpose when conducting rational basis review, *see id.*, here the statutory explanation in § 116-313 we excerpted above provides the required rational basis. Not only are the educational missions of institutions of higher learning a legitimate government interest, but the importance of education is also enshrined in our State's Constitution. *See* N.C. Const. Art. IX, § 1 ("Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools, libraries, and *the means of education shall*

*forever be encouraged."* (emphasis added)). And the immunity law helped further that purpose by allowing the Universities to focus on educational quality rather than worry about lawsuits or what public health measures would be needed to allow schools to continue in person during the early stages of the pandemic. Since there is a rational basis for treating institutions of higher learning different than gyms or restaurants, the immunity statute survives equal protection analysis.

¶ 65    Third, Plaintiffs argue § 116-311 "violates the due process clauses of the United States and North Carolina Constitutions" because they were "deprived of their property rights in the contract, and their property rights in the chose of action that they have acquired as a result of Defendant's breach of said contract." Plaintiffs provide no authority in support of this argument. As with the Equal Protection Clauses, the Due Process Clause of the Fourteenth Amendment to the United States Constitution is "synonymous" with the "term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina," *see, e.g.*, *In re Moore's Sterilization*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976), so our analysis is identical under both the federal and State Constitutions.

¶ 66    The Supreme Court of the United States has long made clear "the State remains free to create substantive defenses or immunities for use in adjudication . . . ." *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432, 71 L.E.2d 265, 276 (1982). In such a case, "the legislative determination provides all the process that is due."

*Id.* at 433, 71 L.E.2d at 276 (citing *Bi-Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46, 60 L.Ed. 372 (1915)).  For example, in *Martinez v. California*, 444 U.S. 277, 62 L.Ed.2d 481 (1980), the Supreme Court of the United States "upheld a California statute granting officials immunity from certain types of state tort claims."  *See Logan*, 455 U.S. at 432, 71 L.E.2d at 276.  While "the grant of immunity arguably did deprive the plaintiffs of a protected property interest . . . they were not thereby deprived of property without due process" because of the legislative determination.  *Id.* at 432-33, 71 L.E.2d at 276.  The only requirement was that the legislative action had "a rational relationship" to the legislature's "purposes."  *Martinez*, 444 U.S. at 282, 62 L.Ed.2d at 487 (quotation marks omitted); *see also Martinez*, 444 U.S. at 282, 62 L.Ed.2d at 487 ("[E]ven if one characterizes the immunity defense as a statutory deprivation, it would remain true that the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational.").

¶ 67        Here, faced with another immunity statute, we also only need to determine if there was a rational relationship between § 116-311 and its purpose.  *See id.*  As laid out above, the statute grants immunity to allow the Universities to fulfill their academic missions.  *See* N.C. Gen. Stat. § 116-313.  As noted above in our discussion of the reasonableness of the immunity statute when discussing the Contract Clause,

there is a rational relationship between the grant of immunity and that goal because immunity freed up the Universities to focus on how to best deliver education online rather than trying to continue in person and take all the public health measures necessary to do that, which would have necessarily taken resources away from efforts to ensure educational quality. Therefore, we reject Plaintiffs' contention § 116-311 violates the Fourteenth Amendment's Due Process Clause or our Constitution's corresponding Law of the Land Clause.

Fourth, Plaintiffs argue the immunity statute violates the Takings Clause of the Fifth Amendment to the United States Constitution because their "chose in action" from Defendant's breach of contract is property that was taken without just compensation. The only authority Plaintiffs cite in support of this contention is *Frost v. Naylor*, 68 N.C. 325 (1873) and its statement "a chose in action is property." *See Frost*, 68 N.C. at 326. But *Frost* focused on "our Constitution," not the federal Constitution's Takings Clause. *See id.* Plaintiffs present no caselaw showing a chose in action, or a right to sue in general, *see Chose in Action*, Black's Law Dictionary (11th ed. 2019) (defining a chose in action as "[t]he right to bring an action to recover a debt, money, or thing"), can be the basis of a Takings Clause violation under the United States Constitution. Therefore, we reject this argument.

Finally, Plaintiffs argue § 116-311 unconstitutionally "intrudes upon the separation of powers because it is a law that was passed in response to specific

litigation already pending in the courts with the purposes of directing the courts on how to adjudicate the pending actions." Plaintiffs provide no other argument, law, or citations to support that argument; the entire argument is that sentence. As such, even assuming *arguendo* passing a law in response to specific litigation already pending would violate separation of powers, Plaintiffs have failed to provide any evidence this law was passed in such a manner. Therefore, we reject Plaintiffs' separation of powers argument.

¶ 70        Thus, after our *de novo* review we are not convinced beyond a reasonable doubt that § 116-311 is unconstitutional. Because we uphold the constitutionality of § 116-311 against all of Plaintiffs' arguments and have already decided it applies to this case, we now hold Plaintiffs' claims are barred by statutory immunity. This holding applies to bar Plaintiffs' contract claims that survive sovereign immunity, and it also represents an alternative bar to Plaintiffs' unjust enrichment claims. Therefore, the trial court did not err in dismissing Plaintiffs' claims.

## III.   Conclusion

¶ 71        We affirm the trial court's dismissal of Plaintiffs' claims. Sovereign immunity bars Plaintiffs' unjust enrichment claims, but it does not bar their contract claims because they have pled valid implied-in-fact contracts. Statutory immunity from N.C. Gen. Stat. § 116-311 bars Plaintiffs' contract claims and, in the alternative, their unjust enrichment claims, because the statute applies to their claims based on its

plain language and meaning and is constitutional.

AFFIRMED.

Judges COLLINS and CARPENTER concur.